# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: _____

Filing Date: July 18, 2016

**NO. 34,182**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**MATIAS LOZA,**

Defendant-Appellant.


**APPEAL FROM THE DISTRICT COURT OF OTERO COUNTY**
**Mark T. Sanchez, District Judge**


Hector H. Balderas, Attorney General
Santa Fe, NM
Charles J. Gutierrez, Assistant Attorney General
Albuquerque, NM

for Appellee

Alderman Law Firm
Kimberly L. Alderman-Penix
Denver, CO

for Appellant

**OPINION**

**WECHSLER, Judge.**

{1} Defendant Matias Loza appeals his convictions for racketeering, contrary to NMSA 1978, Section 30-42-4(C) (2002, amended 2015), and conspiracy to commit racketeering, contrary to Section 30-42-4(D). On appeal, Defendant first argues that the district court improperly admitted evidence of uncharged crimes, wrongs, or other acts. However, when, as here, the uncharged crimes, wrongs, or other acts are the predicate offenses to charges of racketeering and conspiracy to commit racketeering, Rule 11-404(B) NMRA is inapplicable. Defendant additionally argues that the district court improperly admitted the transcript of an audio recording in which a sheriff's office detective identified four distinct voices, including Defendant's. We conclude, however, that the detective was sufficiently familiar with the recorded voices to make identification under New Mexico law. We therefore affirm.

**BACKGROUND**

{2}     Defendant was indicted for statutory violations allegedly committed during his association with an organization referred to as the AZ Boys.[1] The principal criminal enterprise of the AZ Boys was the distribution of methamphetamine.

{3}     In the early morning hours of November 1, 2011, Otero County Sheriff's Office Sergeant Geraldine Martinez was on routine patrol on Taylor Ranch Road near Alamogordo, New Mexico. At approximately 3:30 a.m., Sergeant Martinez was dispatched to investigate a possible home invasion on San Pedro Drive. While proceeding to San Pedro Drive, Sergeant Martinez observed a vehicle completely engulfed in flames near the intersection of San Pedro Drive and Hamilton Road. Sergeant Martinez attempted to determine if the vehicle was occupied, but she was unable to do so. She then proceeded as dispatched.

{4}     Upon her arrival, Sergeant Martinez made contact with the homeowner who directed her to a shed on the southwest portion of the property. While searching in and around the shed, Sergeant Martinez observed Defendant lying under a trailer. She

---

[1] During the course of Defendant's trial, the State offered a substantial amount of testimony and evidence to demonstrate (1) the AZ Boys' status as a criminal enterprise, (2) Defendant's affiliation with the AZ Boys, and (3) Defendant's participation in a pattern of racketeering activities. *See State v. Crews*, 1989-NMCA-088, ¶ 47, 110 N.M. 723, 799 P.2d 592 (describing the essential elements of racketeering). This opinion discusses only the testimony and evidence necessary to resolve the legal issues raised on appeal.

instructed Defendant to exit. After exiting, Defendant was "sweating heavily, and appeared to be really nervous, and smelled of gas." Defendant was taken into custody and transported for medical evaluation.

{5} At approximately the same time, the Otero County Fire Department responded to the vehicle fire observed by Sergeant Martinez. Fire department personnel extinguished the fire and discovered a deceased person inside the vehicle. Investigation indicated that the fire was intentionally ignited by use of an ignitable liquid. The deceased person was subsequently identified as Richard Valdez, and the cause of death was determined to be homicidal violence. The vehicle was identified as a 2006 Suzuki station wagon purchased by a member of the AZ Boys.

{6} After being identified as a suspect in Valdez's death, Defendant was transported to Gerald Champion Regional Medical Center by Otero County Sheriff's Office Deputy Edward Garcia to have a blood sample drawn. While at the hospital, Defendant offered Deputy Garcia $40,000 if Deputy Garcia would release Defendant from custody. Deputy Garcia refused. Defendant then offered Deputy Garcia $50,000. Deputy Garcia again refused. Deputy Garcia recorded this interaction on his pocket recorder and reported it to his supervisor.

{7} Defendant was initially charged with racketeering, conspiracy to commit racketeering, arson, two counts of tampering with evidence, and bribery of a public

official. With the exception of racketeering and conspiracy to commit racketeering, the charges against Defendant were dismissed without prejudice and re-filed as a separate cause of action. Prior to trial, the State filed notice of its intent to introduce Rule 11-404(B) evidence, including evidence of murder, arson, and bribery.

{8}    Included in this evidence and introduced at trial was an audio recording downloaded from one of Defendant's cellular telephones in which various members of the AZ Boys discussed the disposal of a dead body. The disposal mechanism discussed was to "torch" a car with the body inside. Otero County Sheriff's Office Detective Fabian Picazo identified the voices on the recording as those of Defendant and AZ Boys members Bob Chavez, Joe Chavez, and Joe Chavez Jr. The audio recording and a transcript of the discussion, which identified the individual speakers, were admitted into evidence over objection.[2]

{9}    Defendant was convicted in a jury trial of racketeering and conspiracy to commit racketeering. This appeal followed.

---

[2]Defendant objected to the admission of audio recordings downloaded from his cellular telephone on the ground that the State failed to obtain an independent search warrant for the contents of his cellular telephone. Defendant did not raise this argument on appeal.

4

## STANDARD OF REVIEW

{10} We review a district court's admission of evidence for an abuse of discretion. *State v. Jaramillo*, 2012-NMCA-029, ¶ 17, 272 P.3d 682. "An abuse of discretion occurs when the ruling is clearly against the logic and effect of the facts and circumstances of the case." *State v. Thompson*, 2009-NMCA-076, ¶ 11, 146 N.M. 663, 213 P.3d 813 (internal quotation marks and citation omitted).

## RULE 11-404(B)

{11} As a general rule, evidence of uncharged crimes, wrongs, or other bad acts is referred to as character evidence or propensity evidence, and is inadmissible in criminal trials. *See* Rule 11-404(B)(1) ("Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."); *see State v. Beachum*, 1981-NMCA-089, ¶ 6, 96 N.M. 566, 632 P.2d 1024 ("Under Rule [11-]404[(B)], evidence of other crimes, wrongs, or acts is not admissible to show that the defendant had a propensity to commit those crimes."). This rule is expressly limited by Rule 11-404(B)(2), which allows the admission of character evidence if the evidence is offered for "another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." For character

evidence to be admissible in a criminal trial, the state must "provide reasonable notice of the general nature of any such evidence[.]" Rule 11-404(B)(2)(a).

{12}    New Mexico's Rule 11-404(B)(1) mirrors Rule 404(b)(1) of the Federal Rules of Evidence and was adopted in 2012 "to be consistent with the restyling of the Federal Rules of Evidence[.]" Rule 11-404 comm. cmt. Since the language of our Rule 11-404(B)(1) is identical to that of federal Rule 404(b)(1), we may look to the federal courts for guidance as to the proper application of the rule. *See Kipnis v. Jusbasche*, 2015-NMCA-071, ¶ 7, 352 P.3d 687 ("When the state and federal evidence rules are identical, we may rely on interpretations of the federal rule as persuasive authority."), *cert. granted*, 2015-NMCERT-006, 367 P.3d 852.

**Inapplicability of Rule 11-404(B) to Charges of Racketeering and Conspiracy to Commit Racketeering**

{13}    Defendant was tried on charges of racketeering, contrary to Section 30-42-4(C), and conspiracy to commit racketeering, contrary to Section 30-42-4(D). Defendant argues on appeal that the district court's admission of evidence of "other" crimes including murder, arson, and bribery was error. Specifically, Defendant claims that "the State used evidence of the alleged homicide, arson, and bribery to show that [Defendant] committed the charged offenses because he committed the other similar acts."

6

{14} Although Defendant was additionally charged with murder, arson, and bribery in separate criminal proceedings,[3] Rule 11-404(B), if applicable, would limit the State's ability to introduce evidence of these crimes in the current case. *See State v. Gallegos*, 2007-NMSC-007, ¶ 21, 141 N.M. 185, 152 P.3d 828 (describing the prejudicial effect of propensity evidence and the proper application of Rule 11-404(B)). Therefore, the applicability of Rule 11-404(B) to the racketeering and conspiracy to commit racketeering charges against Defendant is central to our inquiry.

{15} Section 30-42-4(C) provides that "[i]t is unlawful for a person employed by or associated with an enterprise to conduct or participate, directly or indirectly, in the conduct of the enterprise's affairs by engaging in a pattern of racketeering activity." Section 30-42-4(D) provides that "[i]t is unlawful for a person to conspire to violate the provisions . . . of this section." The racketeering statute defines "pattern of racketeering activity" as "engaging in at least two incidents of racketeering with the intent of accomplishing any of the prohibited activities set forth in [Section 30-42-4(A)-(D)]." NMSA 1978, § 30-42-3(D) (2009). The statute further defines

---

[3]Otero County District Court Cause Nos. D-1215-CR-2011-00467 and D-1215-CR-2014-00063.

"racketeering" in terms of twenty-five distinct predicate offenses, including murder, arson, and bribery. Section 30-42-3(A).

{16} Because New Mexico's racketeering statute defines violations by reference to predicate offenses, the predicate offenses are essential components of a racketeering offense. Evidence of the predicate offenses is, therefore, intrinsic rather than extrinsic to a racketeering charge. United States circuit courts have held that federal Rule 404(b) does not apply to such intrinsic evidence. *See United States v. Parker*, 553 F.3d 1309, 1314 (10th Cir. 2009) ("Because Rule 404(b) only limits evidence of 'other' crimes—those extrinsic to the charged crime—evidence of acts or events that are part of the crime itself, or evidence essential to the context of the crime, does not fall under the other crimes limitations of Rule 404(b)."); *see also United States v. Green*, 617 F.3d 233, 249 (3rd Cir. 2010) ("If uncharged misconduct directly proves the charged offense, it is not evidence of some 'other' crime."); *see also Black's Law Dictionary* 899 (9th ed. 2009) (defining "intrinsic" as "[b]elonging to a thing by its very nature; not dependent on external circumstances; . . . essential").

{17} While this Court has not previously determined the applicability of Rule 11-404(B) to the predicate offenses of a racketeering charge, our appellate court opinions determining the applicability of Rule 11-404(B) to "other" and "extrinsic" acts are in accord with the United States Circuit Court holdings cited above.

8

{18} For example, in *State v. Ruiz*, the defendant was charged with multiple counts of criminal sexual penetration of a minor and criminal sexual contact with a minor. 2007-NMCA-014, ¶ 1, 141 N.M. 53, 150 P.3d 1003. The victim was a friend of one of the defendant's daughters, and she frequented the defendant's home. *Id.* ¶ 2. The defendant was charged with five offenses, including one in July 1997, based upon the victim's ability to distinguish the general nature and timing of the assaults. *Id.* ¶ 29. At trial, the state offered testimony from the defendant's eldest daughter in which she described witnessing the defendant touching the victim's genital area in July 1997. *Id.* ¶ 27. The defendant argued that such testimony constituted evidence of "prior bad acts" and was subject to exclusion under Rule 11-404(B). *Ruiz*, 2007-NMCA-014, ¶ 27. This Court, after determining that the witness's testimony corroborated the July 1997 charged offense, disagreed with the defendant's interpretation of Rule 11-404(B) and held that "[t]he inclusion of the word 'other' [in Rule 11-404(B)] connotes crimes, wrongs, or acts that are not the subject of the [current] proceedings[.]" *Ruiz*, 2007-NMCA-014, ¶¶ 27-28.

{19} In *State v. Gallegos*, our Supreme Court applied a similar rationale in arriving at the opposite conclusion. 2007-NMSC-007, ¶ 28, 141 N.M. 185, 152 P.3d 828. The defendant was indicted on seven counts of criminal sexual contact of a minor (CSCM) and three counts of aggravated indecent exposure stemming from incidents

9

while he was a guard at the Youth Diagnostic and Detention Center (YDDC). *Id.* ¶ 4. The CSCM charges arose from conduct with a female YDDC resident, J.S. *Id.* The indecent exposure charges arose from separate conduct with another female resident, U.C. *Id.* ¶ 5. The district court denied the defendant's motion to sever the two trials. *Id.* ¶ 2. The defendant was convicted on one charge of CSCM and two charges of aggravated indecent exposure. *Id.* ¶¶ 4, 6. On certiorari from this Court, our Supreme Court reversed the defendant's CSCM conviction, concluding that "we are not confident the jury did not misuse the evidence pertaining to [U.C.] to convict [the defendant] of CSCM." *Id.* ¶ 3. Following analysis that resulted in a conclusion that no Rule 404(B) exception was applicable, our Supreme Court held that "the extrinsic acts of indecent exposure" committed against U.C. "would not have been cross-admissible at separate trials[.]" *Gallegos*, 2007-NMSC-007, ¶¶ 26-36.

{20} The crimes of racketeering and conspiracy to commit racketeering are defined by reference to predicate offenses. Rule 11-404(B) is, therefore, inapplicable to evidence admitted to demonstrate these predicate offenses. Because admitted evidence of murder, arson, and bribery related directly to the predicate offenses of racketeering and conspiracy to commit racketeering, the district court's admission of this intrinsic evidence did not constitute an abuse of discretion.

**RULE 11-901(B)(5) NMRA**

{21}   In support of its case against Defendant, the State introduced (1) an audio recording recovered from Defendant's cellular telephone and (2) a transcript of that audio recording. Defendant argues that the State's witness, Detective Picazo, lacked sufficient familiarity with Defendant's voice, as well as the voices of other members of the AZ Boys, to positively identify and differentiate between four otherwise unidentified voices on the admitted audio recording.

{22}   Rule 11-901(A) provides that "[t]o satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." With respect to the identification of a person's voice, a witness may offer an opinion "based on hearing the voice at any time under circumstances that connect it with the alleged speaker." Rule 11-901(B)(5). In interpreting Rule 11-901(B)(5), this Court, citing various federal court opinions, has held that "once a *minimal* showing has been made that the witness has *some* familiarity with the voice he identified, his identification testimony may be admitted and the jury may then determine the weight to be accorded to that testimony." *State v. Padilla*, 1982-NMCA-100, ¶ 5, 98 N.M. 349, 648 P.2d 807 (emphasis added). As an indication of the low threshold for admissibility established by Rule 11-901(B)(5), *Padilla* discussed *United States v. Smith*, 635 F.2d 716, 719

11

(8th Cir. 1980), a case in which the testifying witness heard the appellant's voice on only two other occasions. *Padilla*, 1982-NMCA-100, ¶ 5.

{23} During the course of his investigation, Detective Picazo heard Defendant's voice numerous times. On the day of Defendant's arrest, Detective Picazo spoke with Defendant in person on two separate occasions: first, for several minutes at the hospital and, subsequently, for between sixty and ninety minutes at the Otero County Sheriff's Office. Detective Picazo also monitored between six and eight of Defendant's telephone conversations during Defendant's pre-trial incarceration. These in-person conversations and monitoring activities provide sufficient foundation for Detective Picazo to identify Defendant's voice on the admitted audio recording.

{24} Furthermore, Detective Picazo either interviewed, or monitored telephone conversations involving, the three other individuals on the admitted audio recording: AZ Boys members Bob Chavez, Joe Chavez, and Joe Chavez Jr. Detective Picazo conducted an in-person interview with Bob Chavez during the investigation and monitored between eight and ten of Bob Chavez's telephone conversations during his incarceration. Detective Picazo monitored a similar number of Joe Chavez's telephone conversations during his incarceration and became familiar with Joe Chavez Jr.'s voice during these telephone conversations.

12

{25} Defendant calls our attention to certain segments of the transcript in which the speaker is undetermined, arguing that Detective Picazo's inability to differentiate among the speakers in all instances negates his ability to offer an opinion as to identity. This argument is unpersuasive. Detective Picazo's exposure to the voices of Defendant and other members of the AZ Boys is sufficient to make the "minimal showing" of familiarity required to allow Detective Picazo to offer an opinion as to the identity of speakers on the admitted audio recording. *Id.* Any inability to do so with respect to individual segments of the audio recording goes to the weight of the evidence, not the admissibility. *See id.* ("The completeness of the identifications goes to the weight of the evidence and not its admissibility." (internal quotation marks and citation omitted)).

{26} Because the transcript of admitted audio recordings was admissible under Rule 11-901(B)(5), the district court's admission of this evidence did not constitute an abuse of discretion.

**CONCLUSION**

{27} For the foregoing reasons, we affirm.

{28} **IT IS SO ORDERED.**

_____
**JAMES J. WECHSLER, Judge**

**WE CONCUR:**

_____

**MICHAEL D. BUSTAMANTE, Judge**

_____

**J. MILES HANISEE, Judge**