## IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

Opinion Number: 2019-NMSC-019

Filing Date: October 31, 2019

No. S-1-SC-36696

**STATE OF NEW MEXICO,**

    Plaintiff-Appellee,

v.

**MATTHEW SLOAN,**

    Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF EDDY COUNTY**
**Lisa B. Riley, District Judge**

Released for Publication December 17, 2019.

Law Offices of Adrianne R. Turner
Adrianne R. Turner
Albuquerque, NM

for Appellant

Hector H. Balderas, Attorney General
Walter M. Hart, III, Assistant Attorney General
Santa Fe, NM

for Appellee

## OPINION

**THOMSON, Justice.**

**{1}**    This Court's dispositional order reversed Defendant Matthew Sloan's conviction at his first trial based on faulty jury instructions. *See State v. Sloan*, S-1-SC-34858, ¶ 13, dispositional order (June 23, 2016) (nonprecedential). Defendant now appeals his convictions for burglary and felony murder after a second jury trial. At the second trial, the State presented evidence that Defendant, armed with a rifle and accompanied by two other men, broke into the victim's house to retrieve drugs or money from the victim and that Defendant shot and killed the victim during the burglary. On appeal, Defendant

argues that (1) the district court denied him his right to be present and to confront witnesses against him by failing to determine whether he made a valid waiver of his right to be present at three pretrial hearings, (2) he received ineffective assistance from his trial counsel, and (3) the district court committed reversible error by declining to instruct the jury on voluntary manslaughter as a lesser included offense. For the reasons that follow, we affirm Defendant's convictions.

## I.      BACKGROUND

{2}      Defendant drove from Carlsbad to the victim's house in Artesia with two accomplices, Donald Ybarra (Duck) and Senovio Mendoza (Hoss), to obtain drugs or money to buy drugs from the victim, who ostensibly owed Hoss. Defendant habitually used methamphetamines and testified that he had been using for multiple days at the time the three left for Artesia and that they all smoked methamphetamines throughout the trip.

{3}      When the three men first arrived at the victim's house, no one came to the door. They drove around Artesia and made other stops before returning to the victim's house a second time. That time Hoss knocked on and kicked the door while Defendant and Duck waited in the truck. Hoss returned to the truck and told them the victim said to come back later.

{4}      The three men then drove to Walmart where they bought beanies that Duck modified to mask their faces. When they returned to the victim's house a third time and Hoss still could not get the victim to open the door, they put the masks on and approached the house. Defendant was armed with a rifle.

{5}      Hoss kicked in the door to the victim's house, and Defendant entered the house yelling "Pecos Valley Drug Task Force." Defendant located the victim, pointed the rifle, and yelled, "Get on the floor"! Meanwhile Hoss searched the house. During the robbery, Defendant shot the kneeling victim in his upper-left forehead near the hairline from approximately three feet away, killing him. The three men left the house after the shooting but returned later to retrieve a flashlight. At his second jury trial, Defendant was convicted of and sentenced for felony murder and tampering with evidence. He appeals his convictions. We discuss additional facts relevant to the issues Defendant raises on appeal in context as needed.

## II.      DISCUSSION

## A.  Rights to Presence and Confrontation

{6}      Defendant remained incarcerated prior to trial and was not transported to any of the three pretrial hearings. He argues that he was denied his right to be present and his right to confront the witnesses against him at critical stages of trial during the three pretrial hearings. These hearings involved prosecution motions-in-limine including a motion to qualify an expert witness, a scheduling conference during which counsel and

the district court considered whether the judge had a conflict of interest, and a motion to exclude testimony of Defendant's sister. Contrary to Rule 5-612(B)(2) NMRA, the record for each of these hearings lacks a written waiver of Defendant's appearance executed by Defendant and approved by defense counsel and the district court. Instead, defense counsel orally waived Defendant's appearance at each hearing.

**{7}** Only the hearing concerning qualification of the expert witness warrants substantive legal analysis. We conclude that Defendant was not denied his right to be present or his right to confront the witnesses against him.

## 1. Standard of review

**{8}** Whether a defendant's constitutional right was violated is a question of law that this Court reviews de novo. *See State v. Montoya*, 2014-NMSC-032, ¶ 16, 333 P.3d 935; *see also State v. Boyse*, 2013-NMSC-024, ¶ 8, 303 P.3d 830 ("'We review [questions] of statutory and constitutional interpretation de novo.'" (alteration in original) (quoting *State v. Ordunez*, 2012-NMSC-024, ¶ 6, 283 P.3d 282)).

## 2. Defendant's right to be present

**{9}** "There is no dispute that a criminal defendant charged with a felony has a constitutional right to be present and to have the assistance of an attorney at all critical stages of a trial." *State v. Padilla*, 2002-NMSC-016, ¶ 11, 132 N.M. 247, 46 P.3d 1247 (citing U.S. Const. amends. VI (guaranteeing an accused "the right . . . to be confronted with the witnesses against him"), XIV (guaranteeing protection of rights by "due process of law"); N.M. Const. art. II, § 14 (guaranteeing an accused the right of a defense "in person" and the right of confrontation)); *see also State v. Corriz*, 1974-NMSC-043, ¶ 5, 86 N.M. 246, 522 P.2d 793 (observing that it "is the defendant's right to be present in the courtroom at every stage of the trial" but that this right "is not an absolute right"). A defendant bears the burden of proving that a particular stage of a criminal proceeding is "critical," which triggers the constitutional right to be present at that stage. *See State v. Torres*, 2018-NMSC-013, ¶ 68, 413 P.3d 467 (citing *Kentucky v. Stincer*, 482 U.S. 730, 747 (1987)).

**{10}** *Torres* relies on *Stincer* concerning what makes a hearing a critical stage of the proceeding. *Stincer* reasoned that critical stages of a criminal proceeding include any stage in which the defendant's "'presence has a relation, reasonably substantial, to the ful[l]ness of his opportunity to defend against the charge.'" 482 U.S. at 745 (quoting *Snyder v. Massachusetts*, 291 U.S. 97, 105-06 (1934), *overruled in part on other grounds by Malloy v. Hogan*, 378 U.S. 1, 2 n.1, 3 (1964)); *accord State v. Acuna*, 1967-NMSC-090, ¶ 10, 78 N.M. 119, 428 P.2d 658 ("To constitute a critical stage of a criminal proceeding, the particular proceeding or act in question must be one at which, or in connection with which, the accused's constitutionally protected rights may be lost or adversely affected."). Therefore, a particular stage of a criminal proceeding may be critical if "the defendant's presence at the proceeding would [contribute] to the defendant's opportunity to defend himself against the charges," *Stincer*, 482 U.S at 744

n.17, such that "a fair and just hearing would be thwarted by his absence," *Snyder*, 291 U.S. at 108. If a particular stage of a criminal proceeding is critical, then the Due Process Clause of the Fourteenth Amendment confers upon the defendant the right to be present at that stage in the proceeding. *See Stincer*, 482 U.S. at 745 ("[E]ven in situations where the defendant is not actually confronting witnesses or evidence against him, he has a due process right 'to be present in his own person whenever his presence has a relation, reasonably substantial, to the ful[l]ness of his opportunity to defend against the charge.'" (citation omitted)).

**{11}** Nevertheless, Defendants may waive their right of presence either personally or through counsel. *See Hovey v. State*, 1986-NMSC-069, ¶ 17, 104 N.M. 667, 726 P.2d 344 ("[E]ven constitutional rights[] may be waived."). Waiver of this constitutional right through counsel generally requires the defendant's express consent, "unless the defendant voluntarily elects to absent himself, or is excluded from the courtroom by reason of 'disruptive, contumacious, or stubbornly defiant' conduct." *Id.* ¶ 24 (Walters, J., specially concurring) (citation omitted).

**{12}** Rule 5-612 incorporates a defendant's constitutional right to be present at all critical stages of trial into the New Mexico Rules of Criminal Procedure by prescribing when New Mexico requires the defendant's presence, when and how the defendant may waive that requirement, and perhaps most significant to this case, when New Mexico does not require the defendant's presence. *See* Rule 5-612; *see also State v. Clements*, 1988-NMCA-094, ¶ 12, 108 N.M. 13, 765 P.2d 1195 ("A defendant's right to be present during all stages of a criminal trial has its genesis in the sixth amendment's confrontation clause and the fourteenth amendment's due process clause. This right has been incorporated into [Rule 5-612(A) NMRA (1986)]."). Rule 5-612(A) provides that "the defendant shall be present at all proceedings, including the arraignment, all hearings and conferences, argument, the jury trial and during all communications between the court and the trial jury." Notwithstanding the breadth of Rule 5-612(A), Rule 5-612(D) specifies certain situations in which the defendant's presence is not required, including proceedings that involve "only a conference or hearing upon a question of law."

**{13}** Because the right to be present is protected by the Fourteenth Amendment and incorporated into our rules of criminal procedure, our analysis of this issue is twofold. First, we must determine whether each of the following three pretrial hearings was a "critical" stage of Defendant's criminal proceeding. If any of the three hearings was a critical stage of Defendant's criminal proceeding, then Defendant had a due process right to be present at that hearing. Second, we must determine whether any of the three pretrial hearings involved "only a conference or hearing upon a question of law" because our rules of criminal procedure do not require Defendant to be present at such a conference or hearing. If a hearing was not a critical stage and our rules did not require Defendant's presence, his right to be present was not violated.

**{14}** Defendant urges us to reverse his conviction, citing *State v. McDuffie*, 1987-NMCA-077, ¶ 10, 106 N.M. 120, 739 P.2d 989, for the broad proposition that he has a

constitutional right to be present at all pretrial hearings "where testimony is to be taken." Defendant maintains that he did not waive that right. The State argues that Defendant's presence was not required at these noncritical stages of the proceedings and that if he was entitled to be present he waived his right to appear. The State also appears to argue that because Defendant waived his appearance through his counsel, this Court should determine that Defendant failed to preserve for appeal the issue of his right to be present. *But see* Rule 12-321(B)(2)(d) NMRA (stating that a party may "for the first time on appeal" raise an issue concerning a fundamental right); *see also State v. Gomez*, 1997-NMSC-006, ¶ 31 n.4, 122 N.M. 777, 932 P.2d 1 ("Even if [Defendant]'s contentions before the trial court had failed to preserve the . . . constitutional claim, we could nevertheless consider it because [confrontation] is a fundamental right.").

**{15}**   For reasons discussed next, we conclude that Defendant did not have the right to be present at any of the three pretrial hearings under the Fourteenth Amendment nor did Rule 5-612 require Defendant's presence.

### a.      Motion in limine to allow expert testimony

**{16}**   Defendant argues that he had the right to be present at a pretrial hearing in which the State sought to admit Detective Rodriguez as an expert witness in blood spatter analysis and to prohibit the defense from discussing the definition of "reasonable doubt" at trial.[1] Defense counsel appeared telephonically and stated, "I'd like to waive [Defendant]'s appearance at this. This is merely an administrative proceeding to clean up some housekeeping matters." The State indicated that it "anticipated potentially putting on testimony" concerning admission of the blood spatter analyst as an expert witness, and defense counsel reiterated that he waived Defendant's appearance. The blood spatter analyst testified generally about his education, experience, and qualifications but did not testify concerning the facts or substance of the case. The district court qualified the blood spatter analyst as an expert witness for trial subject to the State laying an adequate foundation.

**{17}**    *Stincer* provides that a critical stage of a proceeding is one in which a defendant's presence contributes to "the defendant's opportunity to defend himself against the charges" and thereby increases "the fairness of the proceeding." *See* 482 U.S. at 744 n.17, 745. *Stincer*'s facts and procedural posture are instructive on this issue. In *Stincer*, the defendant was excluded from an in-chambers hearing to determine whether two child witnesses were competent to testify. *Id.* at 732-33. The defendant's counsel was present at the hearing and had an opportunity to cross-examine the two child witnesses. *Id.* at 733-34. The questions posed to the child witnesses in that hearing "were directed solely to each child's ability to recollect and narrate facts, to her ability to distinguish between truth and falsehood, and to her sense of moral obligation to tell the truth." *Id.* at 746. The child witnesses were not asked about the substance of the testimony they would give at trial. *Id.* at 733, 745-46. The district

---

[1] The district court allowed a brief discussion of the State's motion concerning reasonable doubt before ruling that there would be no discussion at trial "about what reasonable doubt is other than the definition in the UJI [14-5060 NMRA]" and that the court would "instruct the jury about [the UJI]."

court found that both child witnesses were competent to testify. *Id.* at 733. After trial, the defendant appealed his conviction, arguing that his exclusion from the competency hearing violated his due process rights under the Fourteenth Amendment.[2] *See id.* at 735. *Stincer* affirmed the conviction because no evidence supported a conclusion that the defendant's "presence at the competency hearing . . . would have been useful in ensuring a more reliable determination as to whether the witnesses were competent to testify." *Id.* at 747. Further, evidence did not support a conclusion that his presence would have increased the fairness of the proceeding by, for example, "assist[ing] either his counsel or the judge in asking questions that would have resulted in a more assured determination of competency." *Id.* Therefore the competency hearing in *Stincer* was not a critical stage of the criminal proceeding, and the defendant did not have a due process right to be present. *See id.* at 745-46.

**{18}** In this case, the hearing on whether to qualify the blood spatter analyst as an expert witness is analogous to the competency hearing in *Stincer* because both hearings were intended to determine whether prosecution witnesses could testify against the defendant at trial and neither hearing addressed the substance of that testimony. In this case, the district court heard testimony concerning the qualifications and background of the blood spatter analyst and made a preliminary determination that his testimony would be admissible at trial as expert testimony. *See* Rule 11-104(A) NMRA ("The court must decide any preliminary question about whether a witness is qualified, a privilege exists, or evidence is admissible."); *see also State v. Downey*, 2008-NMSC-061, ¶ 25, 145 N.M. 232, 195 P.3d 1244 (describing the district court's gatekeeper role in qualifying an expert to ensure that admitted evidence is relevant and reliable); *State v. Fry*, 2006-NMSC-001, ¶¶ 54-57, 138 N.M. 700, 126 P.3d 516 (holding that the district court's qualification of an expert to provide an opinion on blood spatter analysis was proper). There is no evidence in this case that Defendant's presence would have increased the fairness of the pretrial hearing.

**{19}** At trial, Defendant heard testimony of the blood spatter analyst concerning both his qualifications and his expert opinion, consistent with Rule 11-104(A), and also had the opportunity to confront and cross-examine the blood spatter analyst. There is no indication that Defendant's presence at the pretrial hearing would have strengthened his counsel's challenge to the blood spatter analyst's qualifications or would have otherwise resulted in a more assured determination of whether the analyst could testify as an expert witness.

**{20}** We conclude that Defendant did not have a right to be present at a hearing on an affirmative motion in limine to establish the qualifications of an expert who was later subject to cross-examination at trial on the same qualifications. This pretrial hearing was not a critical stage of Defendant's criminal proceeding, and due process did not afford him the right to be present.

---

2The *Stincer* defendant also argued on appeal that he was deprived of his rights under the Confrontation Clause of the Sixth Amendment. *See Stincer*, 482 U.S. at 735. Defendant makes a similar argument, which this opinion addresses later.

**{21}** Contrary to our conclusion, Defendant relies on an overly broad reading of *McDuffie*, 1987-NMCA-077, to argue that the hearing to qualify the blood spatter analyst as an expert was a critical stage simply because the expert testified. In *McDuffie*, the Court of Appeals held that a specific suppression hearing was an essential and critical part of the proceedings and accordingly that the defendant's appearance at that hearing was essential. *See id.* ¶ 9. In reaching this holding, the Court of Appeals concluded that "a defendant has a right to be present at a suppression hearing where testimony is to be taken." *Id.* ¶ 10. Defendant contends that this language in *McDuffie* establishes a per se right to be present whenever testimony is taken.

**{22}** Defendant's argument ignores the essential holding in *McDuffie*, which is consistent with United States Supreme Court case law. *See id.* ¶¶ 9, 12 (concluding that defense counsel could not waive a defendant's appearance where defense counsel had not spoken to the defendant *and* where the hearing constituted the "defendant's only realistic chance of prevailing"). *McDuffie* affirms that the Sixth and Fourteenth Amendments to the United States Constitution extend the right to be present "to all hearings that are an essential part of the trial—i.e., to all proceedings at which the defendant's presence has a relation, reasonably substantial, to the fullness of his opportunity to defend against the charge." *McDuffie*, 1987-NMCA-077, ¶ 9 (internal quotation marks and citation omitted). However, the broad declaration "that a defendant has a right to be present at a suppression hearing where testimony is to be taken," *McDuffie*, 1987-NMCA-077, ¶ 10, fails to make clear that the right is circumscribed: The subject matter of the testimony identifies whether the hearing constitutes a critical stage of trial, as discussed below.

**{23}** In analyzing a defendant's right to be present at a critical stage of trial, *McDuffie* cites four federal cases. *See id.* ¶ 10. Those cases distinguish suppression hearings that do not take testimony related to a defendant's guilt or innocence from suppression hearings that concern evidentiary facts about the commission of a crime or a defendant's guilt or innocence. *Compare United States v. Bell*, 464 F.2d 667, 671 (2nd Cir. 1972) (determining that a defendant's right to be present was not violated where the trial court took evidence concerning confidential federal profiling for threat reduction in air transportation but where witness testimony "bore no relationship at all to the question of [the defendant]'s guilt or innocence of the crime charged"), *and United States v. Gradsky*, 434 F.2d 880, 883 (5th Cir. 1970) (determining that an evidentiary hearing was not a critical stage where the issue "was not one of guilt or innocence but . . . whether the evidence leading to the appellants' convictions was tainted"), *with United States v. Hurse*, 477 F.2d 31, 32-33 (8th Cir. 1973) (per curiam) (determining that a supplemental evidentiary hearing was a critical stage where the evidence taken concerned the existence of probable cause for the search, which was related to the question of the defendant's guilt or innocence of the crime), *and United States v. Dalli*, 424 F.2d 45, 48 (2nd Cir. 1970) (determining that a defendant voluntarily waived the right to be present at a hearing where the evidence taken concerned the existence of probable cause for arrest, which was related to the question of the defendant's guilt or innocence of the crime). These federal cases are consistent with *Snyder* and *Stincer* because they affirm that "critical" stages of criminal proceedings are stages in which

defendants' presence increases their ability to defend themselves on questions of their guilt or innocence. *McDuffie* affirms our conclusion that Defendant did not have a due process right to be present because the testimony concerned the blood spatter analyst's qualifications, not evidentiary facts related to Defendant's guilt or innocence.

**{24}** We next turn to Rule 5-612 to determine whether it required Defendant's presence at the pretrial hearing to consider qualifications of the blood spatter analyst. Although Rule 5-612(A) requires a defendant to be present at "all proceedings . . . [and] all hearings and conferences," Rule 5-612(D)(3) states that a defendant's presence is "[n]ot [r]equired" at proceedings that involve "only a conference or hearing upon a question of law." We note equivalence between the federal procedural rule and the New Mexico procedural rule that govern when a defendant's presence is not required. *Compare* Fed. R. Crim. P. 43(b)(3) ("A defendant need not be present . . . [when t]he proceeding involves only a conference or hearing on a question of law."), *with* Rule 5-612(D)(3) (same).

**{25}** Under Fed. R. Crim. P. 43, defendants "must be present" at all stages of a criminal proceeding in which their presence, as a practical matter, would aid their counsel in presenting their defense. *See United States v. Reyes*, 764 F.3d 1184, 1191-92 (9th Cir. 2014) ("We held that Rule 43 did not mandate the defendant's presence because his presence would have contributed nothing substantial to his opportunity to defend since the matters discussed predominantly involved questions of law." (internal quotation marks and citations omitted)); *see also United States v. Gonzales-Flores*, 701 F.3d 112, 118 (4th Cir. 2012) ("[T]he whole point of the right to be present (in both its constitutional and statutory dimensions) is to permit the defendant to contribute in some meaningful way to the fair and accurate resolution of the proceedings against him."); *United States v. Jones*, 674 F.3d 88, 94 (1st Cir. 2012) (providing that the rationale for the Rule 43 "explicit exception for 'a conference or hearing on a question of law'" is "that a defendant's presence on a legal issue . . . is not going to aid the defense counsel in making such arguments" (citation omitted)). We note the similarity in effect between the analysis under Rule 43 (and, by extension, Rule 5-612) and the foregoing analysis under the Fourteenth Amendment. Concerning the pretrial hearing to qualify the blood spatter analyst, Defendant did not have a right under the Fourteenth Amendment to be present at a hearing unrelated to his guilt or innocence, and Rule 5-612 did not require Defendant's presence at this hearing concerned only with a question of law.

### b. Scheduling conference

**{26}** Defendant contends that he had a right to be present at a scheduling conference on December 5, 2016, in which the parties and the district court discussed scheduling matters and a possible conflict that might "disqualify the [c]ourt." During that conference, neither party took issue with the judge's unspecified potential conflict of interest. Defense counsel stated on the record, "My client . . . has authorized me to waive his appearance for today's hearing."

**{27}** This scheduling conference was not a critical stage of Defendant's criminal proceeding. The judge's potential conflict of interest was an uncontested issue, and the scheduling conference did not provide an opportunity for either party to address the charges against Defendant. *See Stincer*, 482 U.S. at 745 (providing that a defendant has a constitutional right to be present when the defendant's presence "'has a relation, reasonably substantial, to the ful[l]ness of his opportunity to defend against the charge.'" (citation omitted)); *accord Torres*, 2018-NMSC-013, ¶ 68. Defendant thus did not have the constitutional right to be present at the scheduling conference. *See Stincer*, 482 U.S. at 745. Additionally, because Rule 5-612(D)(3) provides that defendants "need not be present . . . when the proceeding involves only a conference," Defendant's presence was also not required at the scheduling conference under our rules of criminal procedure.

### c. Hearing to limit testimony of Defendant's sister

**{28}** Finally, Defendant takes issue with the fact that he was not present at the September 15, 2017, hearing that determined the scope of his sister's testimony. Three days before the jury trial began, the district court addressed the State's motion to exclude (on evidentiary grounds) the testimony of Defendant's sister, Kelly Rickert, regarding the background, character, and state of mind of Defendant. Defense counsel again waived Defendant's appearance. Without hearing testimony, the district court addressed the straightforward legal question, whether the trial testimony of Defendant's sister could include the term *duress* in relation to Defendant. The district court did not exclude Ms. Rickert's testimony but properly limited it to relevant evidence.

**{29}** This pretrial hearing on September 15, 2017, was not a critical stage of trial because the district court was enforcing a well-accepted principle of law concerning limiting the scope of witness testimony about a defendant's character or state of mind. *See, e.g.*, Rule 11-404 NMRA (prescribing limitations on the admissibility of character evidence). Accordingly, because the hearing afforded no "opportunity to defend against the charge," Defendant did not have a right under the Fourteenth Amendment to be present at this hearing. *See Stincer*, 482 U.S. at 745 (internal quotation marks and citation omitted); *accord Torres*, 2018-NMSC-013, ¶ 68. Similarly, our rules of criminal procedure did not require Defendant to be present because the hearing concerned only a question of law. *See* Rule 5-612(D)(3) ("A defendant need not be present . . . when the proceeding involves only a conference or hearing upon a question of law.").

### 3. Defendant's confrontation clause claim

**{30}** Concerning Defendant's argument that his absence from the pretrial hearings denied his right to confrontation, "[t]he United States Supreme Court consistently has interpreted confrontation as a right that attaches at the criminal trial, and not before." *State v. Lopez*, 2013-NMSC-047, ¶ 9, 314 P.3d 236. This Court has also observed that "a defendant's right to confront witnesses against him is primarily a trial right, not a pretrial right." *State v. Rivera*, 2008-NMSC-056, ¶¶ 1, 12-14, 144 N.M. 836, 192 P.3d 1213. In addition, because Defendant confronted and cross-examined the blood spatter

analyst at trial, his confrontation challenge fails. *See Stincer*, 482 U.S. at 740 (observing that where a defendant has the opportunity for a full and effective cross-examination at the time of trial, the defendant's inability to cross-examine prior statements is not "of crucial significance" (internal quotation marks and citation omitted)).

**{31}** We conclude that Defendant did not have a right to be present at any of the three pretrial hearings at issue. He was not denied due process or an opportunity to confront the State's witnesses against him pursuant to the Sixth and Fourteenth Amendments, and he was not required to be present under the New Mexico Rules of Criminal Procedure.

## B.    Ineffective Assistance of Counsel

**{32}** Defendant next argues his defense counsel was ineffective because (1) Defendant did not authorize defense counsel to waive his appearance at the pretrial hearings; (2) defense counsel failed to successfully challenge the admission of (a) the expert opinion regarding blood spatter, (b) the recorded conversation between Defendant and Hoss, whose previous trial was connected to the same murder, and (c) Defendant's recorded statement to officers; and (3) defense counsel failed to fully develop Defendant's "intoxication defense."

### 1.    Standard of review

**{33}** "'A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction . . . has two components. First, the defendant must show that counsel's performance was deficient. . . . Second, the defendant must show that the deficient performance prejudiced the defense.'" *Lytle v. Jordan*, 2001-NMSC-016, ¶ 25, 130 N.M. 198, 22 P.3d 666 (omissions in original) (quoting *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). This Court has referred "to the two prongs of this test as the reasonableness prong and the prejudice prong." *Patterson v. LeMaster*, 2001-NMSC-013, ¶ 17, 130 N.M. 179, 21 P.3d 1032. "Effective assistance of counsel is presumed unless a defendant 'demonstrates both that counsel was not reasonably competent and that counsel's incompetence caused the defendant prejudice.'" *State v. Sanchez*, 1995-NMSC-053, ¶ 20, 120 N.M. 247, 901 P.2d 178 (citation omitted); *State v. Astorga*, 2015-NMSC-007, ¶ 17, 343 P.3d 1245 (providing that unless a defendant establishes a prima facie case of ineffective assistance of counsel on direct appeal, "we presume that counsel's performance was reasonable").

**{34}** "An error is found if the attorney's conduct fell below that of a reasonably competent attorney." *State v. Grogan*, 2007-NMSC-039, ¶ 11, 142 N.M. 107, 163 P.3d 494 (internal quotation marks and citation omitted). "When reviewing a claim of ineffective assistance of counsel, we do not second-guess defense counsel's trial strategy and tactics." *Sanchez*, 1995-NMSC-053, ¶ 20. "Further, an assertion of prejudice is not sufficient to demonstrate that a choice caused actual prejudice." *Id.* And an appellate court may dispose of an ineffective assistance of counsel claim based

wholly on the lack of prejudice to simplify the disposition. *Lukens v. Franco*, 2019-NMSC-002, ¶ 19, 433 P.3d 288.

**{35}** This Court has expressed a preference to remand ineffective assistance of counsel claims to the district court for an evidentiary hearing and habeas corpus proceedings "because the record before the trial court may not adequately document the sort of evidence essential to a determination of trial counsel's effectiveness." *See Grogan*, 2007-NMSC-039, ¶ 9 (internal quotation marks and citation omitted).

## 2. Waiver without authorization

**{36}** Based on our previous determinations that Defendant's constitutional rights were not violated and that Defendant's presence was not required as provided under Rule 5-612(D)(3), Defendant has not stated a prima facie claim for ineffective assistance of counsel pursuant to an alleged waiver without authorization.

**{37}** The law does not require that a defendant "be present in court in order to waive his right to be present," and counsel may validly waive the right if authorized. *Hovey*, 1986-NMSC-069, ¶¶ 17-18 ("The validity of the waiver may be established through the defense counsel, the defendant, or both.").

**{38}** But Defendant asserts that he did not authorize defense counsel to waive his appearance and therefore that defense counsel provided ineffective representation when he waived Defendant's appearance. Insofar as Defendant's assertion could give rise to a viable ineffective assistance of counsel claim based on additional evidence, we note that the additional evidence would likely come from privileged communications between Defendant and defense counsel. *See* Rule 11-503 NMRA (providing a privilege for attorney-client communications and a presumption that an attorney has authority to claim the privilege "only on behalf of the client" and "absent evidence to the contrary").

**{39}** Such communications are not part of the record before this Court. *Cf. State v. Roybal*, 2002-NMSC-027, ¶ 19, 132 N.M. 657, 54 P.3d 61 ("If facts necessary to a full determination are not part of the record, an ineffective assistance claim is more properly brought through a habeas corpus petition . . . ."); *see also State v. Telles*, 1999-NMCA-013, ¶ 25, 126 N.M. 593, 973 P.2d 845 ("This Court cannot evaluate matters outside of the record."). We do not comment here on the merit of any claim Defendant may make as part of a habeas corpus proceeding.

## 3. Failure to challenge the admission of evidence

**{40}** Defendant also asserts his defense counsel was ineffective because counsel failed to have some of the evidence against Defendant excluded from trial. Defendant argues that defense counsel objected "pro forma" but "failed to meaningfully challenge . . . expert blood spatter opinion testimony." Defendant then argues that defense counsel should have objected to the admission of a voice recording that was not authenticated. Finally, Defendant argues that defense counsel should have requested a

hearing before admission to determine the voluntariness of Defendant's video-recorded statements to police.

**{41}** Typically, tactics determine the tenacity and manner with which trial counsel fights the admissibility of evidence. *See State v. Singleton*, 2001-NMCA-054, ¶ 13, 130 N.M. 583, 28 P.3d 1124 (observing that strategic and tactical decisions include "'what witnesses to call, whether and how to conduct cross-examination, what jurors to accept or strike, what trial motions should be made, and what evidence should be introduced'" (citation omitted)). In this context, Defendant must establish that no reasonably competent attorney would have abandoned objecting further in order to satisfy the reasonableness prong. *Cf. Patterson*, 2001-NMSC-013, ¶ 19 (observing that "to satisfy the reasonableness prong . . . , [a defendant] must establish that the facts support the motion to suppress and that a reasonably competent attorney could not have decided that such a motion was unwarranted").

### a.     Objection to the expert's qualification

**{42}** A "trial judge has wide discretion to determine whether a witness is qualified to give testimony as an expert, and no set criteria can be laid down to test [such] qualifications." *State v. McDonald*, 1998-NMSC-034, ¶ 19, 126 N.M. 44, 966 P.2d 752 (internal quotation marks and citations omitted). Appellate courts review the qualification of an expert for an abuse of discretion. *See id.* "If there are reasons both for and against a court's decision, there is no abuse of discretion." *State v. Smith*, 2016-NMSC-007, ¶ 27, 367 P.3d 420.

**{43}** Defendant argues that blood spatter analysis is more subjective than scientific but that the evidence in this case was "purported to be based in science by an appropriate expert" who nevertheless had limited experience as an expert in this area. Defendant calls these "clear reasons" why defense counsel should have more vehemently opposed qualification of this expert and admission of his testimony. This Court observed in *Fry*, 2006-NMSC-001, ¶¶ 54-57, that because blood spatter analysis is a field "based on well established scientific principles, and is capable of producing opinions based on reasonable probability rather than speculation or conjecture," an expert may be properly qualified to provide opinion testimony.

**{44}** The blood spatter analyst[3] testified before the jury, first about his qualifications and then concerning his opinion on the victim's position when he was shot: whether he was "standing up" and "where he fell" and "where [his] knees [we]re in relation to where his head [wa]s." The "jury was free to weigh every aspect of the [analyst's] qualifications and was free to disregard [his opinion] entirely." *McDonald*, 1998-NMSC-034, ¶ 21. A "'perceived deficiency'" in education or experience "'is relevant to the weight [of the evidence] and not to [its] admissibility.'" *Id.* (quoting *State v. Hernandez*, 1993-NMSC-007, ¶ 61, 115 N.M. 6, 846 P.2d 312).

---

[3]We note that a different district court judge had previously qualified this blood spatter analyst in a companion case.

**{45}** Because Defendant's argument appears to go to the weight of the evidence and not to its admissibility, and because Defendant did not provide additional evidence to contradict the blood spatter testimony, a reasonably competent attorney could have decided that further objection was unwarranted.

### b. Objection to the authentication of the voice recording

**{46}** Defendant argues that defense counsel should have objected to and insisted on authentication of the voice recording pursuant to Rule 11-901(A) NMRA, which requires "evidence sufficient to support a finding that the [recording] is what the [State] claims it is." Defendant thus implies that the authentication did not meet "the low threshold for admissibility established by Rule 11-901(B)(5)." *State v. Loza*, 2016-NMCA-088, ¶ 22, 382 P.3d 963 (observing that *State v. Padilla*, 1982-NMCA-100, ¶ 5, 98 N.M. 349, 648 P.2d 807, favorably discussed a federal case "in which the testifying witness heard the appellant's voice on only two other occasions").

**{47}** Officer Bryan Burns testified that he collected a "mini-recorder" from Hoss when Hoss was arrested at A1 Best Bonds in Carlsbad. Officer Burns was familiar with both Hoss and Defendant and recognized their voices in the conversation on Hoss's recorder.

**{48}** Defendant also complains that the authentication was insufficient to establish that the recording was "a true and complete recording of the conversation." Rule 11-901 does not require proof that a recorded conversation is "true and complete." It appears that Defendant's argument conflates Rule 11-901 with Rule 11-106 NMRA (permitting a party to introduce "any other part [of a recorded statement introduced by an opposing party] that in fairness ought to be considered at the same time").

**{49}** Considering the applicable authentication threshold and the fact that at least part of Defendant's argument appears to go to the weight of the evidence and not its admissibility, a reasonably competent attorney could have decided that further objection was unwarranted.

### c. Failure to move for suppression of Defendant's statement to the police

**{50}** Defendant argues that defense counsel should have requested "a hearing to determine the voluntariness of [his] interrogation [by] police officers before it was admitted into evidence and played for the jury." Defendant asserts that he had been using methamphetamine continuously for days when police interrogated him and therefore that it was unreasonable for defense counsel to waive his right to require proof of voluntariness by failing to raise the issue. *See State v. Swavola*, 1992-NMCA-089, ¶ 18, 114 N.M. 472, 840 P.2d 1238 (acknowledging that the prosecution has the burden of proof if voluntariness is contested and that failure of defense counsel to move for suppression "forfeited [the defendant's] right to have the State prove voluntariness").

**{51}** Although a waiver analysis may consider intoxication, the "state of intoxication does not automatically render a statement involuntary." *United States v. Smith*, 606 F.3d 1270, 1276 (10th Cir. 2010) (internal quotation marks and citation omitted); *accord State v. Young*, 1994-NMCA-061, ¶ 14, 117 N.M. 688, 875 P.2d 1119 ("[V]oluntary intoxication is relevant to determining whether a waiver was knowing and intelligent."); *see also United States v. Burson*, 531 F.3d 1254, 1258 (10th Cir. 2008) (observing that "[t]he mere fact of drug or alcohol use will not suffice" to negate a knowing and intelligent waiver).

**{52}** On appeal, Defendant does not point to any evidence in the record—such as in the video recording of his interview by the police—to demonstrate that he was substantially impaired, or extremely intoxicated to the point that he could not knowingly and intelligently waive his rights. *See Burson*, 531 F.3d at 1258 ("The defendant must produce evidence showing his condition was such that it rose to the level of substantial impairment."); *see also State v. Bramlett*, 1980-NMCA-042, ¶¶ 20-22, 94 N.M. 263, 609 P.2d 345 (holding that "extreme intoxication" was not consistent with a valid waiver), *overruled on other grounds by Armijo v. State ex rel. Transp. Dep't*, 1987-NMCA-052, ¶ 8, 105 N.M. 771, 737 P.2d 552. In addition, like the defendant in *Swavola*, Defendant ignores the possible benefit to the defense of his recorded statements, such as those expressing remorse or explaining that the killing was accidental. *See* 1992-NMCA-089, ¶ 19.

**{53}** A reasonably competent attorney could have decided that moving the district court to suppress the evidence was ill-advised.

### 4.   Failure to further develop the intoxication defense

**{54}** Defendant did not deny shooting the victim but argued that he did so "based o[n] duress and/or intoxication." Defendant states that the failure to further develop the intoxication defense "clearly prejudiced" him. Defendant testified about his methamphetamine use and the effects methamphetamine had on him personally. Appellate defense counsel appears to hypothesize "addiction as a defense" by identifying the postulation with the "voluntary intoxication defense," based in part on a law review article by Meredith Cusick.[4]

**{55}** Defendant also suggests that not requesting an intoxication jury instruction negating the knowledge element for breaking and entering was unreasonable, citing *State v. Contreras*, 2007-NMCA-119, ¶ 17, 142 N.M. 518, 167 P.3d 966. *Contreras*

---

[4]"Methamphetamine addiction results in catastrophic brain damage to critical neural circuits and structures. . . . This may suggest that addiction, particularly to methamphetamine, should be handled in a different manner than intoxication in the mens rea analysis." Meredith Cusick, Note, *Mens Rea and Methamphetamine: High Time for a Modern Doctrine Acknowledging the Neuroscience of Addiction*, 85 Fordham L. Rev. 2417, 2434 (2017). Ms. Cusick argues for development of a new "doctrine of addiction," separate from a voluntary intoxication defense, based in part on distinguishing between "acute intoxication and addiction." *See id.* at 2434-49. An argument for a new doctrine does not support a claim for ineffective assistance of counsel due to the inability to develop a defense based on a *proposed doctrine*.

requires including a knowledge element in the jury instruction for breaking and entering. *See id.* But Defendant admitted at trial that he knew he did not have permission to go into the victim's house and that they entered after Hoss kicked in the door.

**{56}** Defendant cites Cusick, *supra*, and argues that "[a]n expert would have been able to explain the physiological impact of meth intoxication and, more specifically, could have countered the State's argument that because [Defendant] was able to drive, walk, and talk, he must have been able to form the intent necessary for the predicate felonies." Defendant's argument is tantamount to an argument that the failure to call an expert witness was per se ineffective assistance of counsel, but "this Court has expressly rejected the contention that the failure to introduce the testimony of an expert witness constitutes ineffective assistance of counsel per se." *Lytle*, 2001-NMSC-016, ¶ 44 (citing *State v. Vigil*, 1990-NMSC-066, ¶¶ 17-19, 110 N.M. 254, 794 P.2d 728 (acknowledging that an expert "may be necessary to dispel common misconceptions" that a jury might harbor but reasoning that the decision to use the expert in that case could have been strategic, toward promoting an alternative theory of defense), and *State v. Chamberlain*, 1991-NMSC-094, ¶¶ 45-46, 112 N.M. 723, 819 P.2d 673 (concluding that the failure to hire an expert was a matter of trial strategy)).

**{57}** An expert may be able to dispel common juror misconceptions and to help a jury understand the physiological and cognitive effects of methamphetamine, including how it relates to the ability to form the requisite intent. However, defense counsel may have determined that using an expert to argue for the application of a novel and unprecedented legal theory, an "addiction defense," was inconsistent with the *voluntary* intoxication defense. Defense counsel may have also determined that other pragmatic problems discouraged the hiring of an expert. *See* Cusick, *supra* at 2441-44 (discussing concerns about confusion in presenting neuroscience evidence to juries, noting the lack of consensus on whether and how such evidence should be used in a determination of culpability).

**{58}** Based on the above, it appears possible that a reasonably competent attorney could have decided that trying to obtain expert testimony was unwarranted or unwise in this case. Defendant's argument that his trial counsel failed to further develop an intoxication defense is insufficient to support a claim for ineffective assistance of counsel.

### C. The District Court's Refusal to Instruct the Jury on the Lesser Included Offense of Voluntary Manslaughter

**{59}** Defendant argues that it was reversible error for the district court to refuse to instruct the jury on the lesser included offense of voluntary manslaughter. Defendant requested a jury instruction on voluntary manslaughter, based on the theory that he was under duress from one of his accomplices and that the accomplice was the source of the provocation that caused him to kill the victim. The general defense theory was that Defendant was a weak-willed drug addict—manipulated by Hoss through implied threat, based on the reputation of the manipulator, and by intimidation.

**{60}** "The propriety of denying a jury instruction is a mixed question of law and fact that we review de novo." *State v. Gaines*, 2001-NMSC-036, ¶ 4, 131 N.M. 347, 36 P.3d 438.

**{61}** "A defendant is entitled to an instruction on a theory of the case where the evidence supports the theory." *State v. Salazar*, 1997-NMSC-044, ¶ 50, 123 N.M. 778, 945 P.2d 996. "It is settled law that the victim [of voluntary manslaughter] must be the source of the provocation." *State v Munoz*, 1992-NMCA-004, ¶ 12, 113 N.M. 489, 827 P.2d 1303 (citing *State v. Manus*, 1979-NMSC-035, ¶ 16, 93 N.M. 95, 597 P.2d 280, *overruled on other grounds by Sells v. State*, 1982-NMSC-125, ¶¶ 9-10, 98 N.M. 786, 653 P.2d 162). The proper inquiry is whether sufficient evidence was introduced to support a determination that the "[v]ictim individually provoked [the d]efendant." *State v. Jim*, 2014-NMCA-089, ¶ 15, 332 P.3d 870 (citing *Manus*, 1979-NMSC-035, ¶ 16). "[T]o receive a jury instruction on a lesser included offense, there must be evidence that the lesser offense is the highest degree of crime committed." *Salazar*, 1997-NMSC-044, ¶ 50.

**{62}** Defendant argued below, and on appeal, that the source of the provocation was his accomplice, not the victim. A third party, such as an accomplice, cannot properly support a provocation defense under New Mexico law, and thus there was no evidence of provocation that could reduce the charge of murder to manslaughter. *See, e.g.*, *Jim*, 2014-NMCA-089, ¶ 15. Defendant was not entitled to the requested instruction, and the district court properly denied his request.

## III.  CONCLUSION

**{63}** For the foregoing reasons, we affirm Defendant's convictions.

**{64}  IT IS SO ORDERED.**

**DAVID K. THOMSON, Justice**

**WE CONCUR:**

**JUDITH K. NAKAMURA, Justice**

**BARBARA J. VIGIL, Justice**

**MICHAEL E. VIGIL, Justice**

**C. SHANNON BACON, Justice**