# IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

**Opinion Number:_____**

**Filing Date: August 25, 2016**

**NO. S-1-SC-35451**

**STATE OF NEW MEXICO,**

Plaintiff-Petitioner,

v.

**PATRICIA GARCIA,**

Defendant-Respondent.

**ORIGINAL PROCEEDING ON CERTIORARI**
**Daniel Viramontes, District Judge**

Hector H. Balderas, Attorney General
Steven H. Johnston, Assistant Attorney General
Santa Fe, NM

for Petitioner

McGraw and Strickland LLC
Margaret I. Strickland
Las Cruces, NM

for Respondent

**OPINION**

**NAKAMURA, Justice.**

{1}     Patricia Garcia, a fifty-two-year-old teacher, induced Page Kent, an eighty-four-year-old widower, to believe that she was his loving partner and thereby gained access to his bank accounts and depleted over $50,000 of his life's savings. A jury convicted Garcia of Fraud, in violation of NMSA 1978, Section 30-16-6 (2006), and Computer Access with Intent to Defraud, in violation of NMSA 1978, Section 30-45-3 (2006). The Court of Appeals reversed, finding insufficient evidence to support the convictions. *State v. Garcia*, 2015-NMCA-094, ¶ 1, 356 P.3d 45, *cert. granted*, 2015-NMCERT-008 (No. 35,451, Aug. 26, 2015). The State sought certiorari review only with respect to the fraud conviction. We conclude that sufficient evidence supports the jury's findings that Kent relied on Garcia's misrepresentation and that, because of Garcia's misrepresentation and Kent's reliance, Garcia fraudulently obtained over $20,000. Accordingly, we reinstate the jury's verdict with respect to the fraud conviction, reverse the Court of Appeals's decision regarding the same, and remand to the Court of Appeals to consider the other issues raised by Garcia in her appeal.

**I.     BACKGROUND**

{2}     Page Kent retired to Columbus, New Mexico in 1986. In January 2010, Lois,

his spouse of 36 years, passed away. At the time of Lois's death, Kent was nearly 84 years old. Lois had handled the family finances. When Lois died, Kent had over $100,000 in his bank accounts. Lois's death left Kent with no relatives in New Mexico. He had also been diagnosed with Parkinson's disease.

{3} Later in 2010, while at the post office, Kent met Garcia, a fifty-two-year-old school teacher. During this encounter, Kent asked Garcia if she was married. Garcia told Kent that she was not married but that she had had a few husbands and was then currently divorced. On that first day, Garcia also asked Kent for $5,000 for cosmetic breast surgery. He wrote her a check for that amount.

{4} Kent and Garcia formed a close relationship, or so Kent thought. Garcia knew that Kent had recently lost his spouse and that he was vulnerable. She visited Kent for several hours a few times each week. Garcia told Kent that she would take care of him and would take him to his doctor's appointments and to the hospital if needed. Kent came to think of Garcia as his girlfriend, his partner. He had a romantic interest in her. As Kent described it, Garcia was not quite his "lover" because he was in his eighties. Yet, according to Kent, their relationship was "very nice," they were both "content," and they "just liked each other." Kent also represented to others that Garcia was his "girlfriend."

2

{5}     Garcia knew that Kent thought of her in a loving and trusting way, as a girlfriend or romantic partner. She encouraged it. At one point, late in their relationship, Garcia even proposed marriage to Kent.

{6}     Garcia, however, did not think of herself as Kent's girlfriend or romantic partner. Nevertheless, she feigned an amicable if not amorous relationship with Kent, and, having gained his trust, Garcia asked Kent if she could use his Wells Fargo bank account. Kent acceded. While Kent neither had a computer nor knew how to operate a computer, at least by October 2010, he had allowed Garcia to transfer his savings to her account through online banking. Later, on December 15, 2010, Kent added Garcia as a joint owner on his checking and savings accounts. Kent added Garcia as a joint owner because, as he thought, it would be easier for Garcia's own "bookkeeping," and it would be easier for her to replace the money that she had already taken.

{7}     Garcia took control of Kent's bank accounts. She engaged in a campaign to transfer and spend his life savings. Garcia routinely transferred funds from Kent's saving account into his checking account, and then transferred funds from his checking account into her checking account. She also habitually used his ATM card. Garcia did not inform Kent how much of his money she regularly withdrew, and Kent

3

did not know how much money Garcia took until he received his bank statement in the mail at the end of each month.

{8}   In January 2011, Garcia married Gerardo Marquez. Garcia and Marquez had also cohabitated for some time prior to their marriage and during the period when Garcia was developing a relationship with Kent. Garcia was careful to keep Kent unaware of her marriage to Marquez. During the time she feigned a relationship with Kent, she did not tell Kent that she had married Marquez. Furthermore, Garcia deceived Kent when Kent first met Marquez. This occurred in May 2011, when Marquez, at Garcia's request, traveled to Kent's house to repair Kent's roof. At this meeting, Garcia introduced Marquez to Kent as her "gay friend," not as her spouse. Until Marquez later informed him, Kent never realized that Garcia had married and was never, in fact, his girlfriend or partner.

{9}   At some point in 2011, a representative at Wells Fargo, concerned with the activity on Kent's accounts, made inquiries with Kent regarding his banking activity. The bank's intervention "woke [Kent] up" to the precipitous erosion of his savings, and he asked Garcia to curtail her actions on his accounts. Then, at the bank's instigation, in May and June 2011, Kent opened a new checking and savings account with Wells Fargo and then closed the prior accounts to which he had added Garcia

4

as a joint owner. But, after a while, Garcia convinced Kent to again add her onto his accounts; she told Kent that she would be careful. On October 13, 2011, Kent added Garcia as a beneficiary on his checking and savings accounts. And Garcia continued to deplete Kent's savings.

{10} In late 2011 or early 2012, a representative at the Wells Fargo Elder Abuse Department sent a report to New Mexico Adult Protective Services. The report was referred to a caseworker, Irene Chacón. Chacón contacted Kent and spoke with him about Garcia's activities on his bank accounts. Then, in late January or early February 2012, after Marquez and Garcia had separated, Marquez informed Kent not only that he and Garcia had been married during 2011, but also of Garcia's "suspicious activity" on Kent's bank accounts. Kent was shocked. He later described the fact of Garcia's marriage as "very pertinent." Shortly after being made aware of Garcia's marriage, Kent suspended contact with her. Then, on February 18, 2012, he removed Garcia as a beneficiary on his bank accounts. On February 21, 2012, Kent submitted an affidavit of online fraud with Wells Fargo. In that affidavit, Kent represented that Garcia had "manipulated" him, and "convinced [him] to trust her . . . ." From the time of their meeting in 2010, until February 2012, Garcia had depleted at least $52,000 from Kent's bank accounts.

{11} On June 20, 2012, the State filed a criminal information against Garcia, alleging one count of Fraud (Over $20,000), a second-degree felony in violation of Section 30-16-6, and one count of Computer Access with Intent to Defraud or Embezzle (Over $20,000), a second-degree felony in violation of Section 30-45-3. After a two-day trial, a jury convicted Garcia on both counts.

{12} The Sixth Judicial District Court sentenced Garcia to a term of nine years for each count, to run consecutively. The district court then suspended ten years from Garcia's sentence for a total of eight years of imprisonment. The district court also imposed a five-year period of supervised probation and ordered Garcia to pay $53,800 in restitution.

{13} Garcia timely appealed, and the Court of Appeals reversed Garcia's convictions. *Garcia*, 2015-NMCA-094, ¶ 1. In a divided opinion, the Court held that the State did not offer sufficient evidence to establish that "Kent relied on [Garcia's] deception about her relationship and marriage status" when he allowed her access to his bank accounts. *Id.* ¶¶ 14, 26. The Court also held that the evidence presented at trial was insufficient to prove "the elements of computer access with intent to defraud." *Id.* ¶ 29. In a dissenting opinion, Judge Sutin concluded that the jury was presented with sufficient evidence to support its finding that "Kent's willingness to

6

allow [Garcia] access to his accounts was grounded in Mr. Kent's impression that [Garcia] was his 'girlfriend'" *Id.* ¶ 44 (Sutin, J., dissenting).

{14}     On July 28, 2015, the State petitioned for a writ of certiorari, which this Court granted, exercising its jurisdiction under Article VI, Section 3 of the New Mexico Constitution and NMSA 1978, Section 34-5-14(B) (1972). This Court issued the writ to consider two questions: First, whether the Court of Appeals erred by determining that the element of reliance in a fraud count must be proved by direct and not circumstantial evidence? Second, whether the Court of Appeals erred in concluding that the jury's finding that Kent relied on Garcia's misrepresentations was not supported by sufficient evidence?

**II.     DISCUSSION**

**A.     Standard of review**

{15}     The standard by which an appellate court reviews a jury verdict for sufficiency of the evidence is well-established. "Evidence is viewed in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." *State v. Garcia*, 2011-NMSC-003, ¶ 5, 149 N.M. 185, 246 P.3d 1057 (internal quotation marks and citations omitted). We then determine "whether substantial evidence of either a direct or circumstantial nature

7

exists to support a verdict of guilt beyond a reasonable doubt with respect to every element essential to a conviction." *Id.* We have made clear that "[b]ecause an appellate tribunal does not enjoy the same exposure to the evidence and witnesses as the jury at trial, our review for sufficiency of the evidence is deferential to the jury's findings." *Id.* And we have explicitly said that:

> New Mexico appellate courts will not invade the jury's province as fact-finder by second-guess[ing] the jury's decision concerning the credibility of witnesses, reweigh[ing] the evidence, or substitut[ing] its judgment for that of the jury. So long as a rational jury could have found beyond a reasonable doubt the essential facts required for a conviction, we will not upset a jury's conclusions.

*Id.* (alterations in original) (internal quotation marks and citations omitted).

**B.      A jury may permissibly rely on circumstantial evidence to find the reliance element of a fraud count**

{16}     The State argues that the Court of Appeals erroneously held that the State must prove reliance by direct evidence. Garcia replies that the State has misconstrued the Court of Appeals's holding, but agrees that reliance may be proven by circumstantial evidence. Both parties are correct: "Circumstantial evidence may be used to establish an element of a crime." *State v. McGhee*, 1985-NMSC-47, ¶ 17, 103 N.M. 100, 703 P.2d 877 (internal citation omitted). The elements of "[f]raud may be established by direct or circumstantial evidence." *State v. Ross*, 1986-NMCA-015, ¶ 24, 104 N.M.

8

23, 715 P.2d 471 (internal citation omitted). Therefore, the State may prove the reliance element of a fraud count by presenting circumstantial evidence.

**C.    There was sufficient evidence for the jury to convict Garcia of fraud**

{17}    The parties differ over whether the State presented sufficient evidence to support the jury's finding that Kent relied on a misrepresentation made by Garcia and whether, because of that reliance, Garcia obtained Kent's savings. "[J]ury instructions become the law of the case against which the sufficiency of the evidence is to be measured." *State v. Arrendondo*, 2012-NMSC-013, ¶ 18, 278 P.3d 517 (internal quotation marks and citations omitted). In this case, the jury instruction as to the fraud count provided:

> For you to find the defendant guilty of fraud as charged in Count 1, the state must prove to your satisfaction beyond a reasonable doubt each of the following elements of the crime:
> 1.    The defendant, by any words or conduct, misrepresented a fact to Page Kent, intending to deceive or cheat Page Kent;
> 2.    Because of the misrepresentation and Page Kent's reliance on it, defendant obtained over $20,000 . . . .

*See generally* UJI 14-1640 NMRA. Therefore, to convict Garcia of fraud, the jury had to find beyond a reasonable doubt that Kent relied on Garcia's misrepresentation and, because of that reliance, Garcia obtained in excess of $20,000.

***1.    To establish fraud, the State must prove that a particular misrepresentation of fact induced the victim to act in a way the victim would not have otherwise***

9

*acted*

{18} Two aspects of the reliance element of fraud deserve attention. First, to establish reliance, the State must prove that a misrepresentation induced the victim to act in a way that the victim would not have otherwise acted, "that is, that he took a different course of action because of the misrepresentation." *Hunt Petroleum Corp. v. State*, 901 So. 2d 1, 5 (Ala. 2004); *see also* Wayne LaFave, 3 *Substantive Criminal Law* § 19.7(C) (2d ed. 2003) (noting that to establish the reliance element for the crime of false pretenses, "it is necessary that the swindler's misrepresentation *cause* that victim to pass title to his property or money to the swindler").

{19} Second, reliance must be premised on a particular misrepresentation of fact. Garcia couches the relevant misrepresentation as pertaining to her marital status or her "availability for an exclusive relationship." As such, she argues that to demonstrate reliance, the State must establish that Kent would not have allowed her access to his bank accounts "had he known about her marital status." Garcia contends that there was no evidence that Kent "only allowed her access to his funds because he thought he was in an exclusive relationship with her" or that "his willingness to give . . . [Garcia] funds was predicated upon her availability for an exclusive relationship with him." Garcia, however, does not focus on her most salient

misrepresentation.

***2.*** ***The jury was presented with sufficient evidence that Kent relied on Garcia's misrepresentation that she was his loving partner***

{20} Despite Garcia's framing of the relevant misrepresentation, the jury was presented with sufficient evidence that Garcia misrepresented another fact—*viz*., that she was his girlfriend or loving partner. The jury heard Adult Protective Services caseworker Chacón testify that, based upon her conversation with Garcia, Garcia was aware that Kent thought of her in a loving and trusting way, as a girlfriend or romantic partner. She encouraged it: the jury heard Kent testify that Garcia proposed marriage. And Kent represented that Garcia was his "girlfriend."

{21} The jury was also presented with ample evidence to conclude that, by misrepresenting that she was his loving partner, Garcia induced Kent to allow her access to his bank accounts and that he would not have allowed her such access had he known either that she had married (and thus was not his loving partner) or that she never truly considered herself his partner. First, Kent placed Garcia on his bank accounts and made her a beneficiary of the same, a designation which is usually reserved for loved ones. Second, Kent submitted an affidavit of online fraud in which he claimed that Garcia had "manipulated" him and "convinced [him] to trust her . . . ." Third, Kent suspended contact with Garcia and removed her from his bank accounts

shortly after Marquez informed Kent that Garcia and he had married. Although Kent did not directly testify that but for Garcia's misrepresentation he would not have allowed her access to his savings, the jury was permitted to ground its inference of reliance on Kent's affidavit.

{22} Moreover, the jury heard that Garcia was careful to conceal from Kent her relationship with and marriage to Marquez. Marquez testified that Garcia "made a point to keep us very apart, you know, it was like a whole different life for her . . . . It was almost intentional that she didn't want us to meet." From Marquez's testimony, the jury also could reasonably infer that Garcia believed that had Kent known the truth about her marriage, her access to Kent's savings would have been jeopardized. Thus, the jury was permitted to infer that Kent's willingness to allow Garcia access to his accounts was grounded on the misrepresentation that she was his loving partner. *See, e.g.*, *State v. Slade*, 2014-NMCA-088, ¶ 14, 331 P.3d 930, *cert. granted*, 2014-NMCERT-008 (No. 34,764, Aug. 1, 2014), *cert. quashed*, 2015-NMCERT-001 (Table) (No. 34,764, Jan. 28, 2015) ("A reasonable inference is a conclusion arrived at by a process of reasoning [which is] a rational and logical deduction from facts admitted or established by the evidence[.]" (alterations in original) (internal quotation marks and citation omitted)). Based on the foregoing

12

evidence, the jury was permitted to infer that Kent came to consider Garcia as his loving partner and that he would not have allowed her access to his bank accounts if he had thought otherwise. Accordingly, the jury's finding of reliance was supported by sufficient evidence.

**3.      *A New Mexico appellate court may not upset a jury's verdict because the appellate court finds that evidence presented at trial is consistent with a hypothesis of innocence***

{23}      Garcia's arguments do not demonstrate otherwise. Garcia echoes the Court of Appeals's holding that the circumstantial evidence presented was insufficient to establish reliance beyond a reasonable doubt. The Court of Appeals reached this conclusion because it determined that the evidence offered at trial was equally consistent with a hypothesis of Garcia's innocence. *Garcia*, 2015-NMCA-094, ¶ 23 (citing *State v. Garcia*, 2005-NMSC-017, ¶ 12, 138 N.M. 1, 116 P.3d 72). The Court of Appeals determined that the evidence was as supportive of Kent's reliance as of the alternative finding that, "irrespective of [Garcia's] marital status, . . . [Kent] would have allowed [Garcia] to access his money to assist with her children's financial needs because they were close friends, he felt sorry for her, and because she provided him with assistance and companionship." *Id.*

{24}      We clarify that the Court of Appeals misapplied the sufficiency-of-the-

13

evidence standard of review in reversing Garcia's fraud conviction. The Court of Appeals relied on this Court's dicta in which we noted that we had previously observed that "'[e]vidence equally consistent with two inferences [one of which establishes a defendant's innocence] does not, without more, provide a basis for adopting either one—especially beyond a reasonable doubt." *Garcia*, 2015-NMCA-094, ¶ 17 (quoting *Garcia*, 2005-NMSC-017, ¶ 12 (quoting *State v. Garcia*, 1992-NMSC-048, ¶ 32, 114 N.M. 269, 837 P.2d 862 (internal quotation marks omitted))). Yet, the Court of Appeals overlooked this Court's lengthy discussion in the same 2005 *Garcia* opinion concerning appellate review of the evidence sufficient to support a conviction. *See* 2005-NMSC-017, ¶¶ 16-20. There, we explicitly rejected as "*no longer an appropriate standard for a New Mexico appellate court*" the proposition that "[w]here the evidence . . . supports a reasonable hypothesis of innocence, the State, by definition, has failed to prove its case beyond a reasonable doubt . . . ." *Id.* ¶ 19 (emphasis added). This Court said "it is unproductive to try to formulate a standard of appellate review in terms of a hypothesis of innocence, because inevitably it appears to intrude upon the role of the jury." *Id.* ¶ 20. Since rejecting that standard, to avoid second-guessing the jury, we have expressly established a "two-step process" that requires an appellate court to draw every

14

reasonable inference in favor of the jury's verdict *and then* to evaluate whether the evidence, so viewed, supports the verdict beyond a reasonable doubt. *State v. Cantrell*, 2008-NMSC-016, ¶ 26, 143 N.M. 606, 179 P.3d 1214; *accord Garcia*, 2011-NMSC-003, ¶ 5 (providing the applicable standard of review). Accordingly, the Court of Appeals's determination that the evidence presented at trial was insufficient to support the jury's verdict because it was "equally consistent with two hypotheses on the factual element of reliance" was error. *Garcia*, 2015-NMSC-094, ¶ 23; *see also Garcia*, 2005-NMSC-017, ¶ 20 (rejecting standard of appellate review for sufficiency of the evidence formulated "in terms of a hypothesis of innocence").

{25}     Garcia does not convince us otherwise. She contends that "[i]t is at least as plausible that Mr. Kent either did not care about or did not want to know about [her] other romantic interests given his failure to ever discuss the issue with her . . . ." This argument is not only based on a discredited standard of appellate review, but also is belied by the evidence presented to the jury. At their initial meeting, Kent asked Garcia about her marital status. Kent also testified that once they had formed a relationship, he did not ask Garcia whether she had married, because she already had said that she was not married. In light of this testimony, a jury was permitted to infer that Kent justifiably relied on Garcia's initial representation of her marriage status

15

because, given the relationship that Garcia feigned, the issue of her marriage to another man was the sort of thing that would have come up. And Garcia's claim that the evidence establishes that Kent did not care about Garcia's marital status is undermined by his testimony that it was "very pertinent."

{26} Garcia also argues that, in its effort to establish reliance, the State "is expressly attempting to subsume the element of reliance entirely within the distinct elements of misrepresentation and [Garcia's] fraudulent intent . . . ." According to Garcia, the State cannot prove the reliance element by asking the jury to infer from evidence that shows she "made misrepresentations and intended to deceive [Kent] to obtain money." We are unpersuaded. It is true that the State must prove each element beyond a reasonable doubt. *See, e.g.*, *State v. Smith*, 2016-NMSC-007, ¶ 19, 367 P.3d 420 ("Evidence is sufficient . . . when there exists substantial evidence of a direct or circumstantial nature to support a verdict of guilty beyond a reasonable doubt with respect to every element essential to a conviction." (internal quotation marks and citation omitted)). But it is also true that a jury may justifiably infer more than one element of a crime from the same evidentiary basis. *See, e.g.*, *State v. Flores*, 2010-NMSC-002, ¶ 22, 147 N.M. 542, 226 P.3d 641 (evidence proved not only the actus reus of first-degree murder but also the element of deliberate intent); *State v. Salazar*,

16

1997-NMSC-044, ¶ 46, 123 N.M. 778, 945 P.2d 996 (same). From evidence showing that Garcia deceived Kent and concealed her marriage to Marquez from Kent, the jury was permitted to infer not only that Garcia misrepresented an amorous regard for Kent, but also that Kent relied on that misrepresentation in allowing Garcia access to his bank accounts. Accordingly, the jury was presented with sufficient evidence to support its finding that Kent relied on Garcia's misrepresentation.

{27} Lastly, the State did not seek certiorari review of the Court of Appeals's reversal of Garcia's conviction for Computer Access with Intent to Defraud or Embezzle (Over $20,000) in violation of Section 30-45-3. Accordingly, that issue is not before this Court. *See Mortgage Inv. Co. of El Paso v. Griego*, 1989-NMSC-014, ¶ 16, 108 N.M. 240, 771 P.2d 173 ("We need not address the issue . . . not included in the petition for writ of certiorari."); Rule 12-502(C)(2)(b) NMRA ("[T]he Court will consider only the questions set forth in the petition.").

## III.  CONCLUSION

{28} For the foregoing reasons, we reinstate Garcia's conviction for Fraud in violation of Section 30-16-6, reverse the Court of Appeals's reversal of the same, and remand to the Court of Appeals to consider the other issues raised by Garcia in her appeal.

{29}    **IT IS SO ORDERED.**

_____
                                    **JUDITH K. NAKAMURA, Justice**

**WE CONCUR:**

_____
**CHARLES W. DANIELS, Chief Justice**

_____
**PETRA JIMENEZ MAES, Justice**

_____
**EDWARD L. CHÁVEZ, Justice**

_____
**BARBARA J. VIGIL, Justice**

18