This decision of the Supreme Court of New Mexico was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Supreme Court.

**IN THE SUPREME COURT OF THE STATE OF NEW MEXICO**

**Filing Date: May 19, 2025**

**No. S-1-SC-40149**

**STATE OF NEW MEXICO,**

      Plaintiff-Appellee,

v.

**LONNIE BYRAM,**

      Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF LEA COUNTY**
**Efren A. Cortez, District Judge**

Bennett J. Baur, Chief Public Defender
Kimberly Chavez Cook, Appellate Defender
Brian Parrish, Assistant Appellate Defender
Santa Fe, NM

for Appellant

Raúl Torrez, Attorney General
Walter Hart, Assistant Solicitor General
Santa Fe, NM

for Appellee

**DECISION**

**BACON, Justice.**

**{1}** Defendant-Appellant Lonnie Byram (Defendant), convicted by a jury of first-degree murder, raises several issues on direct appeal. He asserts (1) erroneous admission of hearsay and other-acts evidence, (2) prosecutorial misconduct, (3) cumulative error, (4) insufficient evidence, and (5) ineffective assistance of counsel. We exercise our discretion to affirm Defendant's conviction by nonprecedential decision and

thus limit our discussion of the law and the facts to that necessary to decide the merits of this appeal. *See* Rule 12-405(B) NMRA; *State v. Gonzales*, 1990-NMCA-040, ¶ 48, 110 N.M. 218, 794 P.2d 361 (explaining nonprecedential decisions "are written solely for the benefit of the parties," who "know the details of the case").

## I. BACKGROUND

**{2}** Defendant shot and killed his wife, Danette "Danni" Byram (Victim), while she video recorded him with her cell phone. After the killing, Defendant walked across the street to his brother's house and told his brother "Hey, I killed Danni." He also called his daughter and said "Kylie, I shot her." Defendant was arrested and charged with one count of first-degree murder, willful and deliberate.

**{3}** Kylie Ragland, the adult daughter of Defendant and Victim, testified for the State, as did Shaly Pennel, another adult daughter of Victim. Trial exhibits included four videos Victim had taken on her cell phone. Two of the videos were taken some months before Defendant shot Victim. One was taken the day of the killing. In the final video, Victim recorded Defendant as he sat down in a chair, pointed a gun directly at her, and fired the fatal shot. Defendant also testified in his own defense.

**{4}** After a three-day trial and brief deliberation, the jury found Defendant guilty of willful and deliberate first-degree murder. Defendant was sentenced to life imprisonment. He now appeals his conviction directly to this Court. *See* N.M. Const. art. VI, § 2 ("Appeals from a judgment of the district court imposing a sentence of . . . life imprisonment shall be taken directly to the supreme court.").

## II. DISCUSSION

**{5}** The issues in this appeal revolve around the only contested issue at trial, which was whether Defendant acted with the deliberate, specific intent to kill Victim. We begin with Defendant's challenge to the sufficiency of the evidence, then address his evidentiary challenges, which concern three of the four videos taken by Victim and testimony of her daughter, Ms. Pennel. We refer to those videos as the "Verbal Abuse Video," the "Firearms Video," and the "Defendant's Demeanor Video." Finally, we address Defendant's claims of prosecutorial misconduct, cumulative error, and ineffective assistance of counsel.

## A. There Was Sufficient Evidence to Convict Defendant of First-Degree Murder

**{6}** Defendant asserts there was insufficient evidence for the jury to have found he had the intent necessary to commit first-degree murder. The elements instruction explained the State had to prove beyond a reasonable doubt "the killing was with the deliberate intention to away the life of [Victim]" and Defendant "was not intoxicated from use of alcohol or suffering from a mental disease or disorder at the time the offense was committed to the extent of being incapable of forming an intent to take away the life of another." The jury was also instructed it had to determine whether Defendant was intoxicated or mentally diseased or disordered and if so, "what effect this had on [Defendant's] ability to form the deliberate intent to take away the life of another."

**{7}** The test for sufficiency of the evidence is whether there is substantial evidence, either direct or circumstantial, to support a guilty verdict beyond a reasonable doubt on every element essential to a conviction. *State v. Montoya*, 2015-NMSC-010, ¶ 53, 354 P.3d 1056. "Substantial evidence is relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id.* (text only) (citation omitted).[1] We defer to the jury's findings. *State v. Garcia*, 2016-NMSC-034, ¶ 15, 384 P.3d 1076. We do not second-guess the credibility of witnesses, reweigh the evidence, or substitute the Court's judgment for that of the jury. *Id.* Circumstantial evidence can be substantial evidence, particularly when intent is at issue. *Montoya*, 2015-NMSC-010, ¶ 53. Because intent is subjective, it is rarely established by direct evidence and is almost always inferred from other facts. *Id.*

**{8}** In this case, the jury had before it an abundance of circumstantial and even direct evidence to support its finding that Defendant was *not* so intoxicated or mentally compromised he was unable to deliberately intend to take Victim's life. The jury was provided with many opportunities to assess Defendant's physical and mental demeanor, and thus his ability to form the requisite specific intent. This evidence included Defendant's admissions to his brother and his daughter that he had just killed Victim; the body camera video showing Defendant being put into the police car after his arrest and walking into the police station; testimony from police officers at the scene who observed Defendant was not physically impaired, spoke clearly, and had no trouble answering questions; the recording of the hour-long police interview of Defendant shortly after the killing; the Verbal Abuse, the Firearms, and the Defendant's Demeanor Videos; and the testimony of Ms. Ragland and Ms. Pennel that Defendant had threatened Victim and pointed guns at her in the months leading up to his shooting her. Finally, there is Ms. Byram's own recording of her death, where the jury clearly saw Defendant point a handgun at Victim at close range and fire one lethal shot.

**{9}** There was also Defendant's own testimony. He told the jury he needed four or five beers to get out of bed and when got to 10 or 15 beers, his panic attacks would finally go away. He also testified that on a typical day, he would drink 20 beers; on a bad day, he would drink between 20 and 30 beers; and on a bad, bad day, it would be 30 beers. In the police interview just after the killing, he said he had only about 10 beers. Based on these statements, a rational jury could find Defendant drank less than he normally did on the day of the killing, had had enough alcohol to dissipate a panic attack, and was not so impaired he could not form the requisite intent.

**{10}** Defendant also either suggested or explicitly stated he intentionally killed Victim. After his arrest and as he was being walked into the police station, Defendant explained to the officers. "just so you guys know, I am a Marine, and she talked crap about my [Marine] brother that died." Defendant then unwaveringly and cogently maintained during his hour-long police interview he intentionally killed Victim at her request to end her chronic pain. He also explained in the interview Victim handed him the firearm and

---

1The "text only" parenthetical used herein indicates the omission of any of the following—internal quotation marks, ellipses, and brackets—that are present in the text of the quoted source, leaving the quoted text itself otherwise unchanged.

he shot her once in the heart. From this evidence, a rational jury could find from Defendant's own statements and demeanor he was capable of forming the requisite specific intent.

**{11}** At trial, Defendant claimed he had no memory of the police interview. He disavowed what he said in the interview about Victim having given him the gun and asking him to take her life. He claimed instead he never intended to kill Victim and he was incapable of forming the deliberate intent to commit first-degree murder due to his chronic alcoholism, depression, and the fact that he had no memory of the events in question.

**{12}** Defendant also retained an expert in forensic psychology and neuropsychology who testified he did not think Defendant had the capacity to form specific intent on the day Victim was killed due to Defendant's poor baseline cognitive functioning, severe depression, intoxication, possibly permanent brain damage, and untreated sleep apnea. The defense expert also opined Defendant was acting "more recklessly and negligently than purposely and knowingly," and in New Mexico, being under the influence of a drug like alcohol could "definitely impact [one's] ability to form specific intent."

**{13}** Although Defendant testified and supported his defense with expert testimony, the jury was free to reject both Defendant's version of the facts and the defense expert's opinions. *See Montoya*, 2015-NMSC-010, ¶ 52 (noting the jury can reject the defendant's testimony); *see also State v. Sloan*, 2019-NMSC-019, ¶ 44, 453 P.3d 401 (noting the jury can reject expert opinion). As long as the jury could have found beyond a reasonable doubt that Defendant had the requisite specific intent, we will not upset its conclusions. *Garcia*, 2016-NMSC-034, ¶ 15. Here, the evidence was more than sufficient to support the jury's finding on deliberate intent. Accordingly, we reject Defendant's claim there was insufficient evidence to sustain his conviction for first-degree murder.

**B.      Defendant's Hearsay Objections Were Unpreserved and the Admission of the Alleged Hearsay Testimony Was Not Plain Error As It Does Not Create Grave Doubts About the Validity of the Verdict**

**1.      The Firearms Video**

**{14}** Hearsay is an out-of-court statement that is offered to prove the truth of the matter asserted. Rule 11-801(C) NMRA. Defendant claims the district court abused its discretion by admitting the Firearms Video because it was hearsay. The thirty-second video shows guns Defendant kept in the home he shared with Victim and a trash can full of beer cans. Victim says in the video Defendant twice pointed a gun at her that day, and Defendant had been drinking a lot. Although Defendant cites portions of the record he claims preserved a hearsay objection to this video, our review of the record indicates otherwise.

**{15}** To preserve an issue for appeal, a defendant must timely object and *specifically* apprise the trial court of the nature of the claimed error so the trial court can intelligently

rule. *Montoya*, 2015-NMSC-010, ¶ 45; *see also* Rule 12-321(A) NMRA ("To preserve an issue for review, it must appear that a ruling or decision by the trial court was fairly invoked."). Trial counsel has a "duty to state the objections so that the trial court may rule intelligently on them and so that an appellate court does not have to guess at what was and was not an issue at trial." *State v. Lucero*, 1993-NMSC-064, ¶ 11, 116 N.M. 450, 863 P.2d 1071. To invoke a ruling by the trial court, "a party must assert a legal principle and develop the facts to support the issue." *State v. Chavez*, 2021-NMSC-017, ¶ 16, 485 P.3d 1279. Our "preservation rule is more than a mere technicality; its purpose is to give the trial court the opportunity to correct any error." *State v. Wacey C.*, 2004-NMCA-029, ¶ 15, 135 N.M. 186, 86 P.3d 611.

**{16}** Defendant relies on his pretrial motion in limine for preservation. However, "motions in limine do not sufficiently preserve an issue because the rulings on them are subject to change, depending on the nature of the relevant evidence at trial." *State v. Carrillo*, 2017-NMSC-023, ¶ 23, 399 P.3d 367. Moreover, the exceptions Defendant lodged in his motion were general and failed to sufficiently advise the district court there was a hearsay objection to the Firearms Video. Defense counsel generically moved only to exclude "any and all hearsay" and to "exclude any testimonial hearsay evidence" in violation of the federal and state constitutions. There is no claim below or on appeal that testimonial hearsay was improperly admitted. Defense counsel's oral argument to the district court tracked its motion. Defense counsel did not identify any specific statements he claimed were hearsay and did not provide the Firearms Video (or any other video) to the district court. The district court had the opportunity to review the Firearms Video only after the State provided it (and the other videos) to the court at the conclusion of the motion hearing.

**{17}** At the motion hearing, the district court focused exclusively on Rule 11-404(B) NMRA and prior bad acts, and Rule 11-403 NMRA and undue prejudice. The trial judge observed neither side "really gave [him] any caselaw" and there were many cases that discussed the Rule 11-404(B) issues. He advised the parties he would "review the [Rule 11-]404 issue" and that viewing the videos would help him assess the Rule 11-403 issues. Despite the district court's singular focus on Rule 11-404(B) and Rule 11-403 at the motion hearing, defense counsel never objected on hearsay grounds to the Firearms Video. The district court took Defendant's motion in limine under advisement.

**{18}** After reviewing the videos and prior to trial, the district court admitted the Firearms Video subject to a proper foundation being laid. The court found they were admissible under Rule 11-404(B)(2) as they went to the issue of intent, and they were not unduly prejudicial. Defense counsel merely "renewed" his objection without any mention of hearsay or the Firearms Video and indicated he understood the court's ruling.

**{19}** Defense counsel's trial objections also failed to advise the district court of any hearsay exception to the Firearms Video. Those objections were limited to lack of sufficient foundation, no personal knowledge, irrelevance, undue prejudice, and inadmissible prior bad acts. *See State v. Arguello*, 2024-NMCA-074, ¶ 12, 557 P.3d 1018 (concluding a party's evidentiary arguments on motive and intent did not preserve

arguments on hearsay). Defense counsel's failure to invoke a ruling on hearsay by the district court gave the court no opportunity to correct any alleged hearsay error in the admission of the Firearms Video. Thus, counsel failed to preserve a hearsay objection to this exhibit.

**{20}** The proper standard of review for unpreserved evidentiary matters is plain error. *Montoya*, 2015-NMSC-010, ¶ 46; *see also* Rule 11-103(E) NMRA. When reviewing for plain error, we "examine the alleged errors in the context of the testimony as whole" and find such error only when we are "convinced [the] admission of the testimony [was] an injustice that create[s] grave doubts [about] the validity of the verdict." *Montoya*, 2015-NMSC-010, ¶ 46 (internal quotation marks and citations omitted). Defendant bears the burden of demonstrating prejudice when we review for plain error. *State v. Muller*, 2022-NMCA-024, ¶ 43, 508 P.3d 960. Assuming without deciding the Firearms Video could have been excluded on hearsay grounds, Defendant has not met that burden.

**{21}** First, Defendant makes no argument on plain error, erroneously relying instead on the abuse of discretion standard of review. As such, we need not address this issue. *See Arguello*, 2024-NMCA-074, ¶ 13 ("Because [d]efendant's claim of error was not preserved and [d]efendant has not argued that any exceptions to the preservation rule apply here . . . we give this claim of error no further consideration." (citation omitted)). But Defendant's appellate counsel is clearly aware of the plain error standard of review, as they acknowledge its applicability to unpreserved error in the context of their hearsay challenge to testimony of Ms. Pennel, which we address next. Because this is a direct appeal from a first-degree murder conviction and the issue of plain error was raised in at least one evidentiary hearsay context, we nonetheless conduct a plain error review.

**{22}** Defendant argues the Firearms Video was offered to prove he had pointed firearms at Victim more than once, drank heavily, and was dangerous. Looking at the testimony as a whole, we are far from convinced the admission of the testimony was an injustice that creates grave doubts about the validity of the verdict. *Montoya*, 2015-NMSC-010, ¶ 46.

**{23}** Defendant certainly was not prejudiced by Victim's out-of-court statement that he drank a lot. Defendant himself testified he started the day by drinking several beers, typically drank twenty beers a day, and sometimes drank thirty beers a day. Nor do we find prejudice that would create grave doubts about the validity of the verdict from Victim's statement that Defendant had twice pointed a gun at her. Ms. Ragland testified she had witnessed Defendant pointing a gun at Victim. Ms. Pennel testified whenever she was at Victim and Defendant's home, "the guns were always out." And as we discuss next, Ms. Pennel also testified Defendant had pointed guns at Victim.

**{24}** The Firearms Video might have suggested Defendant was dangerous because he drank heavily, kept guns in various places in the home, and pointed them at Victim. But any prejudice caused by the admission of the Firearms Video was minimal in the context of the testimony and the evidence taken as a whole. For these reasons, we conclude the admission of the Firearms Video was not plain error as it was not an injustice that creates any grave doubts about the validity of the verdict.

**2.     The alleged inadmissible hearsay testimony of Victim's daughter**

**{25}**     Defendant argues the admission of hearsay testimony from Ms. Pennel was either abuse of discretion or plain error. To the extent defense counsel made hearsay objections during the Pennel testimony, they were sustained. But on appeal, Defendant challenges statements by Ms. Pennel that defense counsel did not object to at trial. Because this objection is unpreserved, we again review only for plain error. *Montoya*, 2015-NMSC-010, ¶ 46; *see also* Rule 11-103(E).

**{26}**     The only alleged hearsay objection to the Pennel testimony we discern from the briefing comes from redirect examination.[2] The prosecutor asked Ms. Pennel without objection "about threats that your mother told you about." Ms. Pennel answered Victim told her Defendant "put a gun to her" and Defendant "put a gun on the table and told [Victim] and my sister to shoot each other or themselves." We refer to this testimony as the Defendant threats. Defendant argues these out-of-court statements were used to prove he "routinely pointed guns at and threatened to shoot [Victim]."

**{27}**     Assuming without deciding this testimony was inadmissible hearsay, we are unpersuaded the admission of this testimony was plain error. There was other evidence Defendant routinely pointed guns at Victim from which one could readily infer he was threatening to shoot her. As previously discussed, this evidence included Ms. Ragland's testimony she had witnessed Defendant pointing a gun at Victim and Ms. Pennel's testimony "the guns were always out." Ms. Ragland also testified she sometimes hid Defendant's handgun because Defendant pointed his guns at himself and at her and Victim, and because she felt the need to hide the gun so Defendant would not hurt them. There is also the Firearms Video, the admission of which we have determined was not plain error, in which Victim herself describes prior instances of Defendant having pointed guns at her.

**{28}**     Given this evidence, Defendant has failed to demonstrate how Ms. Pennel's one statement about the threats Victim told her about was prejudicial plain error. *See Muller*, 2022-NMCA-024, ¶ 43 (noting defendant bears the burden of demonstrating prejudice on appellate review for plain error). Having examined the alleged error in the context of the testimony and the evidence as a whole, we conclude the admission of Ms. Pennel's one statement about what Victim told her was not plain error as it was not an injustice that creates any grave doubts about the validity of the verdict. *Montoya*, 2015-NMSC-010, ¶ 46.

---

2Defendant asserts "the State elicited additional hearsay and opinion evidence about State's Exhibit 4 and State's Exhibit 3" through Ms. Pennel's testimony and cites approximately eight minutes of testimony during direct examination. Defendant does not identify any specific testimony, and we will not comb the record to find examples of possible hearsay. *See Kilgore v. Fuji Heavy Indus. Ltd.*, 2009-NMCA-078, ¶ 45, 146 N.M. 698, 213 P.3d 1127 ("[Appellate courts] will not comb the record to find evidence to support a party's position on appeal."); *State v. Rojo*, 1999-NMSC-001, ¶ 44, 126 N.M. 438, 971 P.2d 829 (recognizing appellate courts will not search the record to see if an issue was preserved when a defendant fails to provide appropriate transcript references).

**C.      The District Court Did Not Abuse Its Discretion or Commit Plain Error in Admitting Probative Other-Acts Evidence That Was Not Unduly Prejudicial**

**{29}**    Defendant next argues the district court improperly admitted the Verbal Abuse Video, the Firearms Video, the Defendant's Demeanor Video, and Ms. Pennel's "hearsay testimony" because it was inadmissible character or propensity evidence under Rule 404(B) and was unfairly prejudicial under Rule 11-403. Although defense counsel does not identify which "hearsay testimony" they are challenging as inadmissible propensity evidence, we assume counsel is again referring to Ms. Pennel's testimony about the Defendant threats.

**{30}**    Our rule on character and propensity evidence, also referred to as other-acts evidence, states in relevant part: "Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Rule 11-404(B)(1). However, such evidence is admissible to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Rule 11-404(B)(2). "Rule 11-404(B) is a rule of inclusion, not exclusion." *State v. Bailey*, 2017-NMSC-001, ¶ 14, 386 P.3d 1007 (internal quotation marks omitted). Other than the general propensity to commit the crime charged, all evidence of other acts that is relevant to an issue at trial is admissible. *Id.*

**{31}**    For the following reasons, we conclude the three videos and the Pennel testimony about the Defendant threats were relevant to intent, thus admissible under Rule 11-404(B), and this evidence was not unfairly prejudicial under Rule 11-403.[3]

**1.      The three videos**

**{32}**    Defendant's Rule 11-404(B) and Rule 11-403 objections to the three videos were preserved so we review the trial court's decision to admit the videos for abuse of discretion. *Bailey*, 2017-NMSC-001, ¶ 12. A trial court abuses its discretion only "when the ruling is clearly against the logic and effect of the facts and circumstances of the case" and is "clearly untenable or not justified by reason." *Id.* (internal quotation marks and citation omitted). Here, the district court's admission of the three videos was logical, tenable, and justified by reason.

**{33}**    Our decision in *Bailey* resolves Defendant's challenge to the admission of the three videos. There, the defendant did not contest the physical acts that formed the basis of his conviction for criminal sexual contact of a minor. *Id.* ¶¶ 11, 22. Instead, he argued he lacked the requisite unlawful intent because the charged conduct was merely

---

3Defendant also claims he did not receive adequate notice under Rule 11-404(B)(3)(b) of Ms. Pennel's testimony about the Defendant threats and the State's intention to introduce into evidence the Verbal Abuse Video and the Defendant's Demeanor Video. This argument is not well taken. Defense counsel never objected below on notice grounds. He himself clearly raised in his motion in limine the issue of Ms. Pennel testifying about the Defendant threats and the admission at trial of multiple videos. Additionally, it is clear from the pre-trial hearing on Defendant's motion in limine Ms. Pennel's testimony and the videos were at issue.

parental conduct that had been misinterpreted by the young victim. *Id.* ¶ 7. Similarly, Defendant does not deny killing Victim, he denies only that he did so with the deliberate intent necessary to be convicted of first-degree murder.

{34}    In *Bailey*, the State introduced evidence of a similar uncharged event to establish the defendant's sexual intent during the commission of the charged incidents. *Id.* ¶ 10. Here, the three videos introduced by the State are also other acts evidence which go to Defendant's intent. They demonstrate Defendant's animus toward Victim and his threats to harm her, his history of pointing firearms at her, and his demeanor the day he shot her.

{35}    On the Verbal Abuse Video, Defendant verbally abuses and threatens Victim over a twenty-minute period, calling her "a fucking bitch," telling her that "people" are "coming after you for what you said," and warning her, "go back to Oklahoma. You ain't gonna make it out of here. You're gonna get fuckin' *hurt*, bad." He tells her to "die," promises to "kick [her] ass," and reiterates that she should "die, fucking bitch, die." On the Firearms Video, Victim identifies firearms the Defendant pointed at her the day she took the video. On the Defendant's Demeanor Video, Defendant is shown walking around the house, alert and talking, the day of the killing.

{36}    The Verbal Abuse and Firearms Videos belie Defendant's assertion at trial that he never intended to kill Victim as they evidence his history of pointing firearms at her and threatening to seriously harm her. The Defendant's Demeanor Video provides evidence of Defendant's demeanor on the day of the killing. Defendant's demeanor the day he shot Victim goes to intent given Defendant's claim he was in a drunken stupor for a sixteen-day period prior to and up to the moment he fired the lethal shot, that he was not "in reality," and was therefore incapable of forming the intent necessary to support his conviction for first-degree murder.

{37}    A propensity toward domestic violence might be drawn from the three videos. But the "law does not ban admission of potential propensity evidence that also goes to proving something other than Defendant's propensity to act in a certain way." *Id.* ¶ 19. Here, as in *Bailey*, that "something other" was evidence of Defendant's behavior toward *this particular victim. Id.* We take care "to distinguish between a defendant's propensity to engage in particular kinds of unlawful conduct and the defendant's intent directed toward the victim in the charged offense." *Id.* ¶ 20. Here, as in *Bailey*, the videos in question were other-acts evidence that was limited to Defendant's interactions with Victim in a case where the only element of the crime Defendant challenged was intent. *Id.* ¶¶ 19, 22. As such, the three videos could be properly admitted for demonstrating Defendant's "specific, unlawful intent during commission of the charged conduct." *Id.* ¶ 20; *see also State v. Otto*, 2007-NMSC-012, ¶ 12, 141 N.M. 443, 157 P.3d 8 (determining other-acts evidence between the defendant and the victim was admissible when intent was at issue).

{38}    Consistent with our review of the evidence and applicable caselaw, the district court articulated similar conclusions and specifically cited *Bailey* and *Otto* when he ruled the three videos could be introduced into evidence. We therefore conclude the district

court's admission of the three videos under Rule 11-404(B) was logical, tenable, and justified by reason and was not an abuse of discretion.

**{39}** Defendant also asserts unfair prejudice, claiming the prejudicial nature of the challenged evidence "was not minimal" and "it was used to paint [Victim] as a long-standing victim of domestic violence, for which there was no other evidence." These assertions do not demonstrate unfair prejudice and ignore other trial evidence, which included testimony from Ms. Ragland and Ms. Pennel about Defendant's history of threatening Victim and pointing firearms at her, which is to say, his history of domestic violence toward Victim.

**{40}** Relevant evidence may be excluded "if its probative value is substantially outweighed by," among other things, "unfair prejudice." Rule 11-403. Unfair prejudice "means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *Bailey*, 2017-NMSC-001, ¶ 16 (internal quotation marks and citation omitted). To be unfairly prejudicial, the evidence should be "sensational or shocking," or that which "provok[es] anger, inflam[es] passions, arous[es] overwhelmingly sympathetic reactions, or provok[es] hostility or revulsion or punitive impulses." *Id.* (internal quotation marks and citation omitted). Evidence which "appeal[s] entirely to emotion against reason" can also be unfairly prejudicial. *Id.* (internal quotation marks and citation omitted).

**{41}** "[T]he task under Rule 11-403 is not to exclude all . . . prejudicial evidence." *Bailey*, 2017-NMSC-011, ¶ 26. Rather, it is to exclude only evidence which has "an unduly prejudicial impact on a defendant that far outweighs the evidence's probative effect in proving an element of the State's case." *Id.* While the other-acts evidence of domestic violence toward Victim might be considered prejudicial, those acts are also highly probative of intent. *Cf. State v. Farrington,* 2020-NMSC-022, ¶ 19, 476 P.3d 1231 (observing "intent in domestic violence cases is inherently different" and pointing out "it would make no sense to suggest that the oppressing defendant miraculously abandoned the dynamics of abuse the instant before he killed his victim") (internal quotation marks and citation omitted).

**{42}** Defendant fails to demonstrate the videos were sensational or shocking or in any way appealing to emotion against reason. Defendant's sole defense was lack of unlawful intent, and we conclude any prejudicial effect of the videos did not substantially outweigh their probative value. *Cf. Bailey*, 2017-NMSC-011, ¶ 26 (holding the probative value of other-acts evidence of sexual contact with a minor outweighed the "uniquely and inherently prejudicial" nature of such evidence when the sole defense to the charged crimes was lack of specific intent). It follows the district court did not abuse its discretion in admitting the three videos into evidence.

## 2. The testimony of Victim's daughter in the context of Rule 11-404(B) and Rule 11-403

**{43}** Defendant's objection on appeal to Ms. Pennel's testimony about the Defendant threats was not preserved. Accordingly, we again review the admission of this testimony

for plain error, this time in the context of Rule 11-404(B) and Rule 11-403. *Montoya*, 2015-NMSC-010, ¶ 46. The same evidence and caselaw we just relied upon in determining the district court did not abuse its discretion in admitting the three videos also supports our conclusion that there was no plain error in the admission of Ms. Pennel's other-acts testimony about the Defendant threats and that the testimony was not unduly prejudicial.

**{44}** Like the threats evidenced in the Verbal Abuse and Firearms Videos, the Defendant threats were other-acts evidence that was limited to Defendant's interactions with Victim in a case where the only challenged element of the crime was intent. As such, Ms. Pennel's testimony about the Defendant threats could be properly admitted to show Defendant's "specific, unlawful intent during commission of the charged conduct." *Bailey*, 2017-NMSC-001, ¶ 20. Thus, its admission pursuant to Rule 11-404(B) cannot be considered an injustice that creates any grave doubts about the validity of the verdict. *Montoya*, 2015-NMSC-010, ¶ 46.

**{45}** Nor does an unfair prejudice analysis lead to the conclusion that there was a grave injustice in admitting this testimony. The Defendant threats were highly probative of intent, and Ms. Pennel's brief testimony about those threats was corroborated by the Verbal Abuse and Firearms Videos as well as by other testimony. *See* Section II(A)(2), paragraph 19, *supra*. Viewing the evidence as a whole, Defendant fails to demonstrate the Defendant threats were sensational, shocking, or in any way appealing to emotion against reason. *Montoya*, 2015-NMSC-010, ¶ 46; *Bailey*, 2017-NMSC-001, ¶ 16. Accordingly, we conclude their probative value far outweighs any possible unfair prejudice. It follows the admission of this testimony was not plain error as it does not raise an injustice which creates any grave doubts about the validity of the verdict.

**D.      Defendant's Claim of Prosecutorial Misconduct Was Unpreserved and We Decline To Review It for Fundamental Error**

**{46}** Defendant asserts the prosecutor mischaracterized his expert's testimony during closing argument and the district court abused its discretion in overruling trial counsel's objection to the prosecutor's mischaracterization. Defendant complains, "the prosecutor's sarcasm and disgust was palpable" when commenting on the defense expert's testimony and her delivery was "derisive." More specifically, Defendant argues the prosecutor in rebuttal minimized and belittled the defense expert's testimony by describing his conclusions as "a fun legal phrase" and "magical buzzwords." The record indicates defense counsel only objected to the prosecutor's statement that the expert did not perform any medical tests on Defendant other than making sure he could stand, see, and hear. This objection came well after the prosecutor said the defense expert "threw out this fun legal phrase" and before the prosecutor said the expert used "magical buzzwords."

**{47}** During that one objection, defense counsel started to talk about medical testing and was admonished by the court not to make any speaking objections and was then advised to approach the bench if he had such objections. At no point did defense counsel ask to approach the bench to clarify or explain his objection, identify any

specific language as the source of his objection, object to the tone of the prosecutor's closing and rebuttal, make any further objection to the prosecutor's discussion of the defense expert's testimony, or seek any kind of relief for prosecutorial misconduct during trial or even post-trial. *Cf. State v. Laney*, 2003-NMCA-144, ¶ 33, 134 N.M. 648, 81 P.3d 591 (noting unpreserved claim of error when defendant "did not object on the basis of prosecutorial misconduct" and failed to "request the district court to take any further action because of any prejudice that was alleged to occur"). For these reasons, we conclude Defendant's objection on appeal to the prosecutor's language and tone was not preserved below.

**{48}** When an issue of prosecutorial misconduct is not properly preserved at trial, we have the discretion to review the claim for fundamental error. *State v. Trujillo*, 2002-NMSC-005, ¶ 52, 131 N.M. 709, 42 P.3d 814. Yet Defendant never briefed fundamental error, and the State mentioned it only in passing. Because this issue was not briefed, we decline to consider it to avoid promulgating caselaw based on our own speculation rather than arguments adequately advanced by the parties. *Elane Photography, LLC v. Willock*, 2013-NMSC-040, ¶ 70, 309 P.3d 53; *see also State v. Hobbs*, 2022-NMSC-018, ¶¶ 40-42, 518 P.3d 489 (declining to conduct fundamental error review of unpreserved evidentiary argument).

**{49}** Because Defendant's claim of prosecutorial misconduct was unpreserved and we decline to review it for fundamental error, we reject Defendant's argument that the prosecutor committed prosecutorial misconduct in closing argument.

## E.     There Was No Cumulative Error

**{50}** "The doctrine of cumulative error applies when multiple errors, which by themselves do not constitute reversible error, are so serious in the aggregate that they cumulatively deprive the defendant of a fair trial." *State v. Salas*, 2010-NMSC-028, ¶ 39, 148 N.M. 313, 236 P.3d 32 (internal quotation marks and citation omitted). Defendant asks us to find cumulative error based on his claims of inadmissible hearsay, inadmissible other-acts evidence, and prosecutorial misconduct in closing argument. But here, there was no error in the admission of the alleged hearsay and other acts evidence. Nor did Defendant prevail on his claim that prosecutorial misconduct was committed during closing. Because "there is no error to accumulate" in this case, "there can be no cumulative error." *State v. Samora*, 2013-NMSC-038, ¶ 28, 307 P.3d 328 (internal quotation marks and citation omitted).

## F.     Defendant Has Not Presented a Prima Facie Case of Ineffective Assistance of Counsel

**{51}** Defendant asserts he received ineffective assistance of counsel. He bases his claim on trial counsel's failure to introduce evidence of his blood alcohol levels in the hours after the shooting even though the State provided trial counsel with this information more than a year before trial. To prevail on this claim, Defendant must demonstrate (1) "counsel's performance was deficient" and (2) "the deficient performance prejudiced the defense." *Sloan*, 2019-NMSC-019, ¶ 33 (internal quotation

marks and citation omitted). To demonstrate prejudice, he must show had counsel's assistance not been ineffective, there is a reasonable probability the result of the proceeding would have been different. *State v. Bernal*, 050, ¶ 32, 140 N.M. 644, 146 P.3d 289. He also "must demonstrate that counsel's errors were so serious" they "undermine . . . judicial confidence in the accuracy and reliability of the outcome." *Id.* (text only) (citation omitted).

{52}    Ordinarily, such claims are heard on a petition for writ of habeas corpus pursuant to Rule 5-802(A) NMRA. This allows for the development of a record which adequately documents the sort of evidence necessary to determine trial counsel's effectiveness and gives the district court the opportunity to hold an evidentiary hearing when warranted. *Sloan*, 2019-NMSC-019, ¶ 35.

{53}    The primary evidence Defendant relies on comes from a jury question during deliberations. The jury asked: "Was a drug/alcohol screen done on 9/10/21 when defendant was arrested or any time a [sic] police station?" There was no objection to the district court's response to the jury, which was: "You must rely upon the evidence produced in court."

{54}    Defendant asserts this question "clearly demonstrate[s] that the jury was looking for scientific proof of [Defendant's] intoxication." He also claims had trial counsel provided the evidence of blood alcohol levels "and/or obtained an expert," there is a reasonable probability the result of the proceeding would have been different." Given the jury returned its verdict within minutes of receiving the district court's answer to its question, we have serious doubts about the viability of this conclusory and speculative claim. At a minimum, Defendant fails to make out a *prima facie* case of ineffective assistance of counsel. However, our decision does not prevent Defendant from raising this issue in a habeas corpus proceeding should he develop supporting evidence. *Bernal*, 2006-NMSC-050, ¶ 36.

## III.    CONCLUSION

{55}    For the reasons stated above, we affirm Defendant's conviction for willful and deliberate first-degree murder.

{56}    **IT IS SO ORDERED.**

**C. SHANNON BACON, Justice**

**WE CONCUR:**

**DAVID K. THOMSON, Chief Justice**

**MICHAEL E. VIGIL, Justice**

**JULIE J. VARGAS, Justice**

**BRIANA H. ZAMORA, Justice**